Maria S. RODRIGUEZ, Plaintiff, Appellant,

v.

SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant, Appellee.

No. 80–1555.

United States Court of Appeals, First Circuit.

Argued Feb. 3, 1981.

Decided May 4, 1981.

Patricio Martinez-Lorenzo, Rio Piedras, P. R., for plaintiff, appellant.

Barry J. Reiber, Asst. Regional Atty., Dept. of Health and Human Services, New York City, with whom Raymond L. Acosta, U. S. Atty., San Juan, P. R., Frank V. Smith, III, Regional Atty., New York City, and William Kanter, Atty., Dept. of Justice, Washington, D. C., were on brief, for defendant, appellee.

Before CAMPBELL, BOWNES and BREYER, Circuit Judges.

BREYER, Circuit Judge.

Maria Rodriguez, the appellant, brought this action to obtain judicial review of a final decision by the Secretary of Health and Human Services that she did not qualify for widow's disability benefits under the Social Security Act, 42 U.S.C. § 402(e) (1970). She attacks the Secretary's determination that her asthma, arthritis and mental condition were not disabling, claiming that this determination is not supported by substantial evidence. The district court granted judgment in favor of the Secretary and dismissed the complaint. We affirm the district court's decision.

## I.

The Social Security Act provides disability benefits to a widow if (1) she is the widow of a wage earner who died fully insured, (2) she is between the ages of fifty and sixty, and (3) her physical or mental impairment or impairments (i) are expected to result in death or to last for a continuous period of not less than twelve months and (ii) are "of a level of severity which under regulations prescribed by the Secretary is deemed to be sufficient to preclude an individual from engaging in any gainful activity." *Id.* § 423(d)(2)(B). The Act is thus more restrictive when applied to a widow than to a wage earner, for a wage earner

may satisfy a lesser standard [1] and also may rest his case in part upon such nonmedical factors as age, education, and work experience.[2] A widow, however, must satisfy strict, medically-based regulations [3] which the Secretary of Health and Human Services has promulgated in accordance with the statute's direction. These regulations contain a "Listing of Impairments," 20 C.F.R. ch. III, subpart P, app. 1 (1980), that describes, for each of the major body systems, those impairments that are considered sufficiently severe to constitute a disability under the Act. *See id.* § 404.1525 (Aug. 20, 1980). The regulations provide:

> We will find that you are disabled and pay you benefits as a widow, widower, or surviving divorced wife if . . . [y]our impairment(s) has specific clinical findings that are the same as those for any impairment in the Listing of Impairments . . . or are medically equivalent to those for any impairment shown there . . . .

*Id.* § 404.1578(a). They go on to state:

> (a) *How medical equivalence is determined.* We will decide that your impairment(s) is medically equivalent to a listed impairment in Appendix 1 if the medical findings are at least equal in severity and duration to the listed findings. We will compare the symptoms, signs, and laboratory findings about your impairment(s), as shown in the medical evidence we have about your claim, with the medical criteria shown with the listed impairment. If your impairment is not listed, we will consider the listed impairment most like your impairment to decide whether your impairment is medically equal. If you

have more than one impairment, and none of them meets or equals a listed impairment, we will review the symptoms, signs, and laboratory findings about your impairments to determine whether the combination of your impairments is medically equal to any listed impairment.

> (b) *Medical equivalence must be based on medical findings.* We will always base our decision about whether your impairment(s) is medically equal to a listed impairment on medical evidence only. Any medical findings in the evidence must be supported by medically acceptable clinical and laboratory diagnostic techniques. We will also consider the medical opinion given by one or more physicians designated by the Secretary in deciding medical equivalence.

*Id.* § 404.1526(a)–(b). Plaintiff believes that her asthma, arthritis, and mental condition, when taken together, are equivalent to conditions described in the listings and thus warrant a finding of disability.

Plaintiff filed her application for benefits in October 1977. She described her disability as arthritis and asthma. She submitted a "certification" and a subsequent report from her doctor, Jose Colon Morales, a general practitioner. Dr. Colon wrote in the certification that she "has been under treatment for severe arthritis and this precludes her from working." [4] She also submitted a statement from Dr. C. J. Zamora Pamies, who specializes in psychiatry and neurology but also apparently practices general medicine. In a report dated October 3, 1977, based upon two examinations conducted in

---

1. A wage earner is considered disabled under the Act if unable to engage in "any *substantial gainful activity*." 42 U.S.C. § 423(d)(1)(A) (1970) (emphasis added).

2. *Id.* § 423(d)(2)(A).

3. The regulations pertaining to widow's disability cases have recently been rewritten and rearranged to "make them easier to read and understand." 45 Fed.Reg. 55566, 55566 (Aug. 20, 1980). At least as applicable to the present case, no substantive changes were enacted. Although these revisions have not yet been codified in C.F.R., the respective C.F.R. section

numbers have been identified. We will cite to these revisions as follows: 20 C.F.R. § —— (Aug. 20, 1980).

4. Dr. Colon issued his certification on October 3, 1977. The record does not reveal any underlying clinical support for his conclusion, nor does it indicate when, as of that date, he had last seen plaintiff. Prior to the issuance of his further report on October 17, 1977, Dr. Colon examined plaintiff and also obtained x-rays of the lower back region. In that later report, he diagnosed arthritis in several locations and concluded that recovery was "not expected."

January and June of that year, he wrote that she "has chronic arthritis and bronchial asthma, conditions which disable her to work."[5] The Puerto Rico Disability Unit of the Social Security Administration sent Mrs. Rodriguez to Dr. Jose Ramirez Rivera, a specialist in internal medicine. He conducted what appear from the record to be more extensive tests than the other two doctors. They included x-rays of the chest, spine, right hand and left shoulder, measurements of pulmonary function, and other laboratory testing. He concluded that plaintiff suffered from "mild" bronchial asthma and a generalized bone arthritis which was "moderately severe" in her spine. The accompanying x-ray report disclosed "minimal" inflammation of the spine, evidence of arthritic changes in the shoulder and some deformity of one finger. In his detailed report, Dr. Ramirez included the SSA's disability determination form upon which he noted that Mrs. Rodriguez could, during an eight-hour workday, sit for seven to eight hours, stand for five to six hours, and walk for three to four hours. In his view, she was able to lift or carry up to ten pounds frequently and up to twenty pounds occasionally. She could use her hands for grasping, pushing, and pulling, but not for fine manipulating. She could use her feet for repetitive movements. She was not able to squat or crawl, but she could bend and climb occasionally. On the basis of the reports of Dr. Colon, Dr. Zamora and Dr. Ramirez Rivera, the Disability Unit examiner concluded that plaintiff's asthma and arthritis were not of sufficient severity to warrant a finding of disability.[6]

Plaintiff asked for reconsideration. The Disability Unit then sent her to another doctor specializing in internal medicine, Dr. Jaime Ortiz Toro. He conducted another thorough examination with x-rays of the chest and laboratory reports. In a detailed report, he concluded: "[The m]ain problem of this lady is her asthma, which is moderately controlled with present management. Her second problem, osteoarthritis, needs adequate management and physical therapy to have some improvement." Dr. Ortiz's "disability determination form" is less optimistic than that of Dr. Ramirez Rivera. It states that, during an eight-hour workday, Mrs. Rodriguez can sit for only three hours, stand for one hour and walk for one hour. She can lift up to twenty pounds or carry up to ten pounds only occasionally. She can use her hands for grasping, pushing, pulling and fine manipulating. She can use her feet. She can bend and reach above shoulder level occasionally, but she cannot squat, crawl, or climb. The Disability Unit examiner concluded on the basis of this new examination (and the prior examinations) that plaintiff had bronchial asthma, that she had no heart condition, and that her impairments were not severe enough to warrant a finding of disablement.

Plaintiff then sought a hearing before an administrative law judge. At the de novo hearing, which was held on June 26, 1978, plaintiff and her daughter testified. Plaintiff complained of arthritis, asthma, severe headaches, chest pains, and other ailments. After the hearing, the Disability Unit sent her to a psychiatrist, Dr. Mojica Sandoz, for a psychiatric evaluation. Dr. Mojica wrote that she was logical, lucid, and coherent, possessed adequate judgment and had no difficulty in establishing interpersonal relations. He found her depressed, with a tendency towards invalidism and "hypochondriacal thinking." Based upon his detailed findings, he diagnosed a chronic but moderate "depressive neurosis," accompanied by "insecurity feelings, ... overpreoccupation about physical condition, anxiety and ten-

---

5. Dr. Zamora conducted a third examination, without x-rays or laboratory testing, on October 13, 1977. He diagnosed arthritis in her spine and knees and bronchial asthma and reported "little improvement."

6. The examiner stated: "Claimant has asthma and osteoarthritis. However the medical evidence shows no severe condition in her respira-

tory system. Laboratory findings are within normal limits. Although she has arthritis of back and extremities, the range of motion is not seriously impaired. There is [sic] no joint deformities or effusion in major extremities." He concluded that "claimant's impairment(s) does not meet or equal the level of severity described in the listing of impairments ...."

sion and no insight." Noting that plaintiff "has never worked outside doing the usual household chores," he concluded: "It will be very difficult for her to tolerate sustained work pressure and criticism, and to adjust at her age to a long-lasting competitive work condition. The working prognosis is considered poor."

The Disability Unit then sent the medical reports of all five examining physicians to Dr. J. J. Ramirez Fuentes, a specialist in psychiatry, and asked his opinion as to whether plaintiff's asthma, arthritis and depressive neurosis were the medical equivalent of a listed impairment. Dr. Ramirez Fuentes emphasized those notations in the various reports characterizing her depressive neurosis as "moderate," her asthma as "mild," and her arthritis as "moderately severe." He stated that, in his opinion, the severity of plaintiff's problems, as revealed in the reports of the laboratories and examining doctors, and when considered either individually or in combination, did not rise to the level of severity required for a finding of "disability" under the SSA regulations.

The Administrative Law Judge concluded that Mrs. Rodriguez was not disabled. He based his conclusion upon the reports of the five examining doctors, upon the view of Dr. Ramirez Fuentes, the nonexamining medical adviser, upon the x-ray results showing no arthritic changes of the severity contemplated by the regulations, and upon his observation of plaintiff at the hearing. He found some of the plaintiff's statements at the hearing inconsistent with others she had made and gave her testimony "low credibility."

The SSA Appeals Council denied Mrs. Rodriguez's request for review, and she then filed an action for review in the federal district court. In the meantime, the SSA had revised the Listing of Impairments governing the determination of widow's disability claims. See 44 Fed.Reg. 18170 (March 27, 1979). Therefore, at the Secretary's re-

quest, the court remanded the case to the agency to obtain an updated medical opinion about the effect of the new listings. The SSA then sent the medical documents to Dr. Edwin C. Mitchell, an orthopedic surgeon. After reviewing the x-ray results and examining physician reports, Dr. Mitchell concluded that plaintiff's arthritis was not severe enough to warrant a finding of disability, either by itself or in combination with her psychological ailments.[7] The Appeals Council, in a careful opinion, reviewed all the medical evidence, including the reports from the five examining doctors and the two medical advisers. On the basis of this evidence and the ALJ's opinion, the Council affirmed the ALJ's denial of benefits.

## II.

The basic standards for review in this case are not in dispute. The Social Security Act specifically mandates that "[t]he findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive ...." 42 U.S.C. § 405(g) (1970). In reviewing the record for substantial evidence, we are to keep in mind that "[i]ssues of credibility and the drawing of permissible inference from evidentiary facts are the prime responsibility of the Secretary." *Rodriguez v. Celebrezze*, 349 F.2d 494, 496 (1st Cir. 1965). The Secretary may (and, under his regulations, must) take medical evidence. But the resolution of conflicts in the evidence and the determination of the ultimate question of disability is for him, not for the doctors or for the courts. *Richardson v. Perales*, 402 U.S. 389, 399, 91 S.Ct. 1420, 1426, 28 L.Ed.2d 842 (1971); *Alvarado v. Weinberger*, 511 F.2d 1046, 1049 (1st Cir. 1975) (per curiam). We must uphold the Secretary's findings in this case if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support his conclusion. *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 216, 83 L.Ed.

---

7. Dr. Mitchell stated that he could not "eliminate the possibility of minimal osteoarthritic changes in the spine, hands and shoulders" in the future. However, he found no evidence "of a degree of lumbar nerve root compression which would be so painful as to preclude all forms of work activity, nor which when considered in combination with the diagnoses by the psychiatrist would equal the Listings."

126 (1938); *Lewis v. Califano,* 574 F.2d 452, 455 (8th Cir. 1978); *Sullivan v. Weinberger,* 493 F.2d 855, 861 (5th Cir. 1974), *cert. denied,* 421 U.S. 967, 95 S.Ct. 1958, 44 L.Ed.2d 455 (1975).

Plaintiff disputes none of these points. Rather, she makes two related claims. First, citing this Circuit's case of *Browne v. Richardson,* 468 F.2d 1003 (1st Cir. 1972), and analogous holdings in other circuits,[8] she claims that evidence provided by doctors who have neither examined her nor testified at her hearing cannot, by itself, constitute substantial evidence. Second, she argues that the *only* evidence in the record that contradicts her claim that the *combination* of her asthma, arthritis and mental condition disables her consists of the reports of Dr. Ramirez Fuentes and Dr. Mitchell, neither of whom examined her or testified.

■ We reject plaintiff's arguments because the Secretary's conclusion in this case does not rest solely upon the reports of the nonexamining, nontestifying doctors. To the contrary, the record contains considerable evidence that would allow a reasonable person to conclude that plaintiff's ailments are not, individually or in combination, equivalent to the disabling conditions contained in the Secretary's listings. Such evidence includes x-ray reports, laboratory reports, pulmonary examination reports, and reports of both psychiatric and physical medical examinations. Indeed, the reports of the neutral *examining* physicians—Dr. Ortiz, Dr. Ramirez Rivera, and Dr. Mojica—are sufficiently detailed that they would appear sufficient to support the agency's conclusion even without further evaluation. They reflect a more extensive examination than the contrary reports of Dr. Colon and Dr. Zamora;[9] the first two clearly reflect an overall evaluation of plaintiff's physical condition, and the psychiatrist's report is sufficiently detailed to allow the agency to factor in plaintiff's mental condition. Dr. Ramirez Fuentes and Dr. Mitchell were admittedly the only two doctors to express explicit opinions about the medical equivalence of plaintiff's combined ailments. However, their *opinions* on this question (which is ultimately for the finder of fact to decide) are not the only *evidence* on the question. Indeed, even if the final two reports of Drs. Ramirez Fuentes and Mitchell are treated not as evidence at all, but as neutral advisory opinions designed to help the lay trier of fact decide the question of equivalence,[10] the remaining evidence would seem adequate to support the agency's findings.

■ There is no need, however, for the agency to treat these advisory reports as if they had *no* evidentiary weight. Although *Browne* suggests that such reports cannot by themselves constitute substantial evidence, it does not hold that they are to be treated as irrelevant. The weight to which they are entitled will vary with the circumstances, including the nature of the illness and the information provided the expert.

8. *See, e. g., Veal v. Califano,* 610 F.2d 495, 497–98 (8th Cir. 1979); *Allen v. Weinberger,* 552 F.2d 781, 786 (7th Cir. 1977); *Martin v. Secretary of HEW,* 492 F.2d 905, 907–908 (4th Cir. 1974).

9. The agency is free to take account of the amount, and nature, of underlying clinical support, *see* notes 4 and 5 *supra,* in determining the weight to give to the statements of Dr. Colon and Dr. Zamora declaring plaintiff to be disabled. *See* 20 C.F.R. § 404.1527 (Aug. 20, 1980): "[A] statement by your physician that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled. We have to review the medical findings and other evidence that support a physician's statement that you are 'disabled.'"

10. The Secretary's regulations do not require the agency or the courts to consider the reports of medical advisers as "evidence." Rather, after stating that "medical findings in the evidence" must be supported by "medically acceptable clinical and laboratory diagnostic techniques," 20 C.F.R. § 404.1526 (Aug. 20, 1980), the regulations state: "We will also consider the medical opinion given by one or more physicians ... in deciding medical equivalence." *Id.* In a slightly different context, the Supreme Court has noted that a medical adviser is a "neutral" physician "used primarily in complex cases for explanation of medical problems in terms understandable to the layman-examiner." *Richardson v. Perales,* 402 U.S. 389, 408, 91 S.Ct. 1420, 1430, 28 L.Ed.2d 842 (1971). This matter is of little importance, however, for the advisers' opinions here can be considered as part, but not all, of the supporting evidence.

*Cf. Guzman Diaz v. Secretary of HEW*, 613 F.2d 1194, 1199 n.7 (1st Cir. 1980) (whether testimony of nonexamining physician can constitute substantial evidence "will doubtlessly vary with the circumstances"). Obviously, the fact that the experts have neither examined nor testified lessens the probative power of their reports. But the facts that the experts received extensive documentation containing relevant information, that they were highly qualified,[11] that they reviewed the record, that they confined themselves to expressing an opinion about "equivalency" on the basis of the clinical reports before them—all factors present here—militate in favor of according their reports some evidentiary value.

Of course, the agency might have called for still one more medical examination focusing on the *combination* of plaintiff's physical and mental ailments, but its decision not to do so is reasonable. Plaintiff's mental condition did not become an issue until *after* her hearing; neither she nor her own doctors (including a psychiatrist) had previously mentioned it. Apparently, the agency subsequently decided to send her to a psychiatrist, Dr. Mojica, who wrote a detailed report describing her condition. The value of still one more examination, after five doctors had already examined the plaintiff, is not obvious. Similarly, the agency's decision not to ask Drs. Ramirez Fuentes and Mitchell to testify seems reasonable as there is no indication from the record that an opportunity to cross-examine them would have provided either additional evidence or enlightenment.[12]

In sum, the record indicates that this is not a case in which the agency treated an applicant's claim either grudgingly or summarily. It is not a case in which the agency ignored her evidence or failed to give it adequate weight. It is a case in which the agency investigated a matter thoroughly, weighing the opinions of at least seven[13] doctors, and made certain that its conclusions rested upon clinical examinations as well as medical opinions. It is also a case that presents what is obviously a close question of fact and judgment. The agency's determination of this question is reasonable and supported by substantial evidence in the record. The decision of the district court upholding the agency is, therefore,

*Affirmed.*

---

11. Dr. Mitchell graduated from the George Washington School of Medicine and practiced orthopedic surgery for twenty-six years. Dr. Ramirez Fuentes attended medical school in Spain and has served as a practicing and consulting psychiatrist in both the private and public sectors.

12. Moreover, had plaintiff sought to cross-examine these two advisers, she could have moved to reopen the hearing and requested subpoenas for their attendance. 20 C.F.R. § 404.926 (1980); *see Richardson v. Perales*, 402 U.S. 389, 404–05, 91 S.Ct. 1420, 1429, 28 L.Ed.2d 842 (1971). On this general subject,

plaintiff commented at oral argument that, due to an oversight, she did not receive Dr. Mitchell's report until the decision of the Appeals Council had issued. However, we need not address this point; plaintiff did not seek a supplemental hearing when she actually received the report, did not voice an objection during the district court proceedings, and has not raised the issue on appeal.

13. The agency actually has considered the opinions of nine doctors, since the two Disability Unit examiners who initially evaluated and rejected plaintiff's claim were both physicians.