USCA1 Opinion

 

 February 5, 1992 ____________________ No. 91-1471 VICTOR J. IRLANDA ORTIZ, Plaintiff, Appellant, v. SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant, Appellee. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF PUERTO RICO [Hon. Juan M. Perez-Gimenez, U.S. District Judge] ___________________ ____________________ Before Campbell, Torruella and Cyr, Circuit Judges. ______________ ____________________ Raymond Rivera Esteves and Juan A. Hernandez Rivera on brief for ______________________ ________________________ appellant. Daniel F. Lopez Romo, United States Attorney, Jose Vazquez _______________________ _____________ Garcia, Assistant United States Attorney, and Amy S. Knopf, Assistant ______ ____________ Regional Counsel, Department of Health and Human Services, on brief for appellee. ____________________ ____________________ Per Curiam. Claimant, Victor J. Irlanda Ortiz, ___________ appeals from the judgment of the Federal District Court for the District of Puerto Rico affirming the decision of the Secretary of Health and Human Services that claimant was not entitled to disability benefits. We affirm. BACKGROUND __________ Claimant filed an application for Social Security disability benefits on August 18, 1983. He alleged an onset date of 1978 and claimed disability due to problems with his back, nerves, arms, legs, headaches, stomach and high blood pressure. Claimant's insured status expired on March 31, 1984. The application was denied initially and upon reconsideration. On July 31, 1984, after holding a hearing, an administrative law judge (ALJ) determined that claimant was not disabled. The case was remanded, however, for reconsideration under the new mental health regulations contained in the Disability Benefits Reform Act of 1984. The same ALJ conducted another hearing and on December 18, 1987, concluded that claimant suffered from severe musculoskeletal and mental impairments which prevented him from returning to his past work as a construction laborer. The ALJ did not credit claimant's allegations of pain and found that his emotional problems did not significantly reduce his ability to perform the full range of sedentary work. Using the Medical-Vocational Guidelines (the -2- Grid), Table No. 1, Rule 201.23, Pt. 404, Subpt. P., App. 2, as a framework, he found that claimant was not disabled. The Appeals Council ordered a remand. It directed the ALJ to reconsider claimant's complaints of pain in light of Avery v. Secretary of Health and Human Services, 797 F.2d _____ _______________________________________ 19 (1st Cir. 1986). Specifically, the Appeal Council stated that where the objective medical evidence does not support the degree of pain alleged by claimant, the ALJ also must consider the daily activities described by claimant and his prior work record. On remand, the ALJ again discounted claimant's allegations of disabling pain, noting that the record contained reports in which claimant was described as being in no physical distress. The ALJ also relied on the fact that for long periods of time claimant was not in any treatment for his back problems. The ALJ inferred that had claimant's pain been as severe as alleged, claimant would have sought treatment. As for his mental impairment, the ALJ concluded that a slight difficulty in maintaining social functioning did not reduce claimant's ability to perform the full range of sedentary work. Using the same Grid rule, the ALJ concluded that claimant was not disabled. On January 19, 1989, the Appeals Council once more remanded the case to the ALJ. It apparently accepted the ALJ's conclusions as to claimant's complaints of pain. -3- However, it decided that vocational expert testimony was required to determine the number of jobs available to claimant given both his exertional and non-exertional impairments. As a result, the ALJ held a hearing on June 14, 1989 at which a vocational expert (VE) testified. Based on the Grid as a framework and the answers to the hypothetical posed to the VE, discussed infra, the ALJ still concluded _____ that claimant was not disabled. The Appeals Council denied claimant's request for review on January 9, 1990. Thus, the ALJ's decision became the final decision of the Secretary. Claimant appealed the Secretary's decision to the district court. The case was referred to a magistrate judge who determined, without much explanation, that the Secretary's decision was not supported by substantial evidence. He therefore recommended vacating the decision. However, the district court did not adopt this recommendation. Rather, it affirmed the Secretary's decision on the ground that the record contained conflicting evidence. MEDICAL EVIDENCE ________________ The record reveals that claimant sought treatment only from the State Insurance Fund (SIF) during the period for which he was insured. He initially had pursued such treatment in connection with an accident he sustained at work in July 1978. The progress notes from the SIF reveal the following sporadic course of treatment: -4- (1) 1978. ____ In 1978, claimant was evaluated only once. On October 19, an examination revealed that there was stiffness in the lumbosacral paravertebral muscles. The diagnosis was post-traumatic chronic low back syndrome and herniated nucleus pulposus (HNP). The note also indicates that claimant had been under treatment with improvement; however, there are no medical records that reflect such treatment. At this time, claimant was placed on anti-inflammatory and muscle relaxant medication. (2) 1979. ____ In 1979, claimant also was examined only once. This neurological examination disclosed pain upon palpation at L4-L5 and positive straight leg raising. Nonetheless, claimant's reflexes were adequate. An EMG was recommended. This test was performed in November and was normal. (3) 1980. ____ After a lapse of almost one year, claimant visited the SIF four times. On September 2, his straight leg raising was limited to 45 degrees bilaterally but there was no muscle weakness. The diagnosis was suspected lumbar radiculopathy at L5 with a herniated disc at L4-L5 and depression with anxiety. In October, a physiatrist examined claimant and found marked muscle spasms; again, there was motor weakness. The diagnosis was chronic painful lumbosacral syndrome. -5- However, on November 11, the physiatrist noted that claimant's condition had improved and on November 24, claimant's range of motion was preserved, his straight leg raising was negative bilaterally and there was no sensory or motor deficits. (4) 1981. ____ Claimant did not receive any treatment for his back in 1981. A psychiatric evaluation, performed on July 9, indicated that claimant was insecure, afraid and anxious. However, he was oriented, his memory was conserved and his judgment was adequate. Claimant was referred to the mental health center. There are no records of any mental health treatment subsequent to this evaluation. (5) 1982. ____ The next note from the SIF, dated January 22, 1982, indicates that claimant's range of motion of his trunk was moderately limited but he could walk on his heels and toes. Straight leg raising was positive. At this time, he was discharged with 15% disability. A psychiatrist noted, also in January, that claimant should not undergo a myelogram until his anxiety neurosis had improved. Claimant's next visit to the SIF was not until November 29 when he underwent a psychiatric evaluation to determine whether his mental impairment was related to his work accident. At this examination, claimant was logical, coherent, relevant, -6- oriented, and realistic. His affect was adequate, his intellectual capacity average, and his judgment acceptable. The evaluating psychiatrist diagnosed a generalized anxiety disorder which, he concluded, was not related to the accident. (6) 1983. ____ In 1983, claimant's condition improved even though a CT scan, performed on September 19, showed a herniated disc at L5-S1. Two further neurological evaluations were conducted. On November 29, a physiatric examination disclosed no significant limits on claimant's range of motion, no pain upon palpation, no significant muscle spasm, and no deficits in his reflexes. Physical therapy was not recommended. A note dated December 7 indicates that claimant reported that he had experienced improvement of his condition with the use of medications. (7) 1984. ____ Claimant received no treatment for his back in 1984. In January, the SIF re-evaluated claimant's emotional condition. The reviewing psychiatrist determined that claimant's anxiety neurosis was related to his back problems. He also recommended psychotherapy as a means of improving claimant's mental status to the point where surgery could be performed. An initial evaluation was conducted on March 6. Claimant was described as being in good physical condition. -7- His thought content was relevant and coherent; his attention span was good, his present memory was conserved, and he was oriented. His affect was appropriate, but the evaluating psychiatrist described him as being uncooperative concerning the testing of conceptual clarity, mathematic operations, and his remote memory. The diagnosis was anxiety neurosis. The final psychiatric report, after five therapy sessions, indicated only that claimant presented as coherent, logical, and well oriented; his affect was described as appropriate. The report indicated that claimant was being treated with medications. Apart from the SIF records, there are three other medical reports relevant to the period of claimant's insured status. The first is a psychiatric consultation performed on January 3, 1983. Claimant's wife reported that claimant was able to take care of his own personal needs, but did not do any household chores. Claimant's activities were listed as walking and smoking; he was described as quarrelsome and irritable. The consulting psychiatrist stated that claimant had poor muscle tone, but otherwise appeared to be healthy and in no obvious stress. His gait appeared normal. The mental status exam revealed that claimant was uncooperative, answering few of the doctor's questions. Nonetheless, claimant's speech was clear, there were no perceptual disturbances and his ideas were goal oriented. His thought -8- processes were logical, coherent, organized and relevant. The psychiatrist could not test claimant's cognitive abilities because he refused to respond to the questions. She concluded that claimant's mental problems were "part of a life long pattern of personality traits that are maladaptive and inflexible, producing impairment in social and occupational adjustment." Although claimant's prognosis was viewed as "guarded," the doctor also noted that personality deterioration was "slight." She did not indicate whether psychiatric treatment was indicated. The second evaluation, conducted just after claimant's insured status had expired, was performed by a neurologist at the behest of claimant's attorney. This physician noted that there were no motor weaknesses or atrophy and no sensory deficits in claimant's extremities. His reflexes were normal and straight leg raising was negative bilaterally, although claimant experienced some pain in his left leg at 80 to 90 degrees. He could walk on his heels and toes but only with some limping. There was only mild tenderness to palpation in the lumbar area. The diagnosis was chronic low back pain syndrome. The doctor concluded that claimant could not perform his prior work. This examiner also completed a residual functional capacity (RFC) assessment. Claimant was described as being able to occasionally lift files or ledgers; his abilities to -9- stand, walk and sit were limited to less than six hours each in an eight-hour workday. He could occasionally climb, balance, stoop, kneel, crouch and crawl. His capacity for reaching and handling was unlimited. However, claimant could not use heavy effort to push or pull. Finally, a non-examining consultant reviewed the record and completed a mental RFC assessment. This physician diagnosed an affective disorder characterized by anxiety, tension and sadness which resulted in slight restrictions in daily living activities and moderate limits in social functioning. She determined that claimant was not significantly limited in his abilities to remember work-like procedures and to understand, remember and carry out short and simple instructions. Claimant also had minimal limitations in sustaining an ordinary routine without special supervision, asking questions and requesting assistance, maintaining socially appropriate behavior and traveling alone. There was no evidence of limitations in claimant's abilities to respond to changes in his work setting and to make simple work-related decisions. Claimant had moderate limits, however, in his abilities in maintaining concentration for extended periods of time, performing within the confines of a schedule, maintaining regular work attendance, being punctual and being able to complete a normal work week without interruptions due -10- to psychologically based symptoms. He also had moderate limits in interacting with the general public, accepting and responding to criticism and getting along with coworkers without distracting them. Based on this evidence, the ALJ presented the VE with the following hypothetical: an individual who is limited to sedentary work where he can alternate positions and who is attentive, cooperative, passive, coherent, relevant, oriented, able to concentrate on and carry out simple instructions and able to relate to coworkers and supervisors, but unable to deal with the general public. The VE testified that such an individual could be a packer, sorter, classifier, assembler of small parts, or labeler in the electronics field. The ALJ then added to the hypothetical claimant's subjective complaints of constant back pain which prevents him from concentrating, marked anxiety and fear, poor memory and marked difficulty in relating to others. To this hypothetical the VE replied that claimant would have problems in complying with the minimum requirements of the above jobs. DISCUSSION __________ The Social Security Act provides that the factual findings of the Secretary shall be conclusive if supported by "substantial evidence." 42 U.S.C. 405(g). "We must uphold the Secretary's findings . . . if a reasonable mind, -11- reviewing the evidence in the record as a whole, could accept it as adequate to support his conclusion." Rodriguez v. _________ Secretary of Health and Human Services, 647 F.2d 218, 222 ________________________________________ (1st Cir. 1981). It is the responsibility of the Secretary to determine issues of credibility and to draw inferences from the record evidence. Id. Indeed, the resolution of ___ conflicts in the evidence is for the Secretary, not the courts. Id. ___ We find substantial evidence in the record to support the finding that claimant's exertional impairments did not preclude him from performing sedentary work. Claimant maintains that his back pain resulted in more severe strength limitations. It is true that there is an objective medical impairment -- a ruptured disc at L5-S1 -- that can reasonably be expected to produce pain. Avery, 797 F.2d at _____ 21. Yet, we believe the ALJ did not err in deciding that claimant's complaints were not credible to the extent alleged. More than a few of the evaluations from the SIF found claimant with no motor or strength weaknesses and little spasm. Indeed, the last SIF note of record concerning claimant's back, made after the CT scan that resulted in a _____ diagnosis of a ruptured disc, indicates that claimant had improved, experienced no pain on palpation and demonstrated a good range of motion. -12- Further, the record reveals that claimant apparently did not receive any treatment for his back in 1981 and 1984; he was seen only once in 1979 and once in 1980. We view these gaps in the medical record as "evidence." The Secretary concluded that this evidence conflicted with claimant's allegations of unrelenting pain. The Secretary then drew the inference that claimant would have secured more treatment had his pain been as intense as alleged. As we stated, the resolution of conflicts in the evidence and the drawing of conclusions from such evidence are for the Secretary. See Rodriguez, 647 F.2d at 222. We accordingly ___ _________ accept the Secretary's determinations relating to claimant's exertional impairments. Claimant's non-exertional impairment -- his mental condition -- presents a closer case. The ALJ determined that claimant's anxiety disorder reduced the full range of sedentary work only to the extent that claimant could not deal with the general public or perform complex or detailed tasks. This conclusion was reflected in the hypothetical the ALJ posed to the VE. She responded by listing several unskilled jobs such an individual could perform. Social Security Ruling (SSR) 85-15 contains two sets of mental capabilities required for unskilled work. The first group includes the abilities to understand, remember and carry out simple instructions, to respond appropriately -13- to the normal work environment and to deal with changes in a routine work situation. The SIF psychiatric evaluations describe claimant as being coherent, relevant and oriented; his judgment and attention span were described as adequate. The consultative psychiatric examiner reached similar conclusions. As for the RFC form completed by the non- examining physician, it specified that claimant could perform simple work tasks, follow an ordinary routine, request assistance and handle changes in the work-place setting. The second inquiry concerns a claimant's ability to cope with the demands of any work environment. SSR 85-15 states that these demands include the need to be punctual and to attend work on a regular basis, the ability to accept supervision and the capacity to remain in the work place for an entire day. Although the SIF evaluations and the psychiatric consultation did not address these issues, the physician who completed the RFC assessment indicated that claimant was moderately limited in these areas of functioning. Such limitations possibly erode the occupational base available to claimant and could affect the performance of even the jobs listed by the VE. See Ortiz v. ___ _____ Secretary of Health and Human Services, 890 F.2d 520, 527 ________________________________________ (1st Cir. 1989). The question is how much the range of ___ ____ sedentary, unskilled work is decreased. See id. ___ ___ -14- Although the record arguably could support a different conclusion, we believe there is substantial evidence to support the Secretary's decision that claimant's capacity for the full range of such work was not significantly reduced. Thus, we must uphold his decision. See Rodriguez Pagan v. Secretary of Health and Human ___ ________________ _________________________________ Services, 819 F.2d 1, 3 (1st Cir. 1987), cert. denied, 484 ________ _____ ______ U.S. 1012 (1988). Apart from the conclusions of the non- examining physician, there is no other indication that claimant's ability to accommodate routine work demands was inadequate -- either slightly, moderately or markedly. Moreover, aside from the five therapy sessions claimant attended through the SIF, there is no record of any other mental health therapy during his insured status. As a result, there is no way of telling whether psychiatric treatment could have improved these "marked" limitations. We do not think that a claimant with a diagnosed impairment may assert entitlement to disability benefits without at least securing a determination concerning what, if any, treatment options are available to him or her. Indeed, "[i]mplicit in a finding of disability is a determination that existing treatment alternatives would not restore a claimant's ability to work." Tsarelka v. Secretary of Health and Human ________ _________________________________ Services, 842 F.2d 529, 534 (1st Cir. 1988) (per curiam). As ________ we described in Tsarelka, the Social Security regulations ________ -15- specifically provide that to qualify for benefits a claimant must follow prescribed treatment. Id. (citing 20 C.F.R. ___ 404.1530(a), (b)). The lack of any evidence of sustained treatment in this case only bolsters our decision that the record adequately supports the Secretary's final conclusion that claimant was not disabled. Affirmed. ________ -16-