Hills v. HHS                          CV-94-214-SD   04/06/95

UNITED STATES DISTRICT COURT FOR THE

DISTRICT OF NEW HAMPSHIRE


Michael Hills


        v.                                    Civil No. 94-214-SD


Secretary of Health and Human Services


O R D E R


     Presently before the court is a review, pursuant to section
205(g) of the Social Security Act (Act), codified as amended at
42 U.S.C. § 405(g), of the final decision reached by the
Secretary of Health and Human Services (Secretary).

     Claimant Michael Hills filed an application for disability
insurance benefits (DIB) on January 5, 1993.  Hills also filed an
application for supplemental security income (SSI) benefits on
December 31, 1992, which the agency assigned a protective filing
date of January 1, 1993.  Both applications are predicated upon
the allegedly disabling low back condition which Hills claims
forced him to cease working as of December 4, 1992.  Claimant's
applications were denied initially and after reconsideration by
the Social Security Administration.

     Upon claimant's request, a hearing was held before an

Administrative Law Judge (ALJ) on September 30, 1993.  The ALJ
conducted a de novo hearing and received testimony from the
claimant, claimant's wife, claimant's attorney, and an impartial
vocational expert.  On December 16, 1993, the ALJ issued his
written findings, indicating that claimant was not under any
disability during the time in question.  Thereafter, claimant
filed a request for review by the Appeals Council, which was
denied on April 2, 1994, thus rendering the December 16, 1993,
decision of the ALJ the final decision of the Secretary.  Hills
subsequently filed this motion to review the Secretary's
decision.

## Background

### 1.  Education and Work History

Michael Hills was born on May 15, 1962, and currently
resides in Derry, New Hampshire.  Transcript (Tr.) 41-42.  At the
time of the hearing before the ALJ, Hills was 31 years old.  Tr.
42.  In addition to completing high school, claimant subsequently
obtained a certificate from the Andover Tractor Trailer School in
September 1980.  Id.

At the time of the onset of his alleged disability, claimant
was employed by the Sea Coast Learning Center as a bus driver for
handicapped students.  Tr. 42, 108, 132.  Previous work

experience includes positions as a gas station/convenience store cashier, Tr. 42, 65-66, 108; an assistant manager of a restaurant, Tr. 42, 58-59, 108; a receiving department clerk for a window manufacturing plant, Tr. 64-65, 108; and a meat packer for a supermarket, Tr. 66, 108.

Claimant Hills has not been employed or sought employment since December 1992, Tr. 42, but rather spends his time at home reading, watching television, and doing needlework, Tr. 55, 119. He performs household chores with his wife, including washing the dishes and vacuuming the living room, and takes part in shopping for groceries. Tr. 60.

## 2. Medical History

### a. Treating/Examining Physicians

Beginning about November 1992, Hills sought a course of treatment for alleged lower back pain. Tr. 44, 161. After seeing his family physician, Dr. Joseph Cataldo, and a physical therapist, Hills was referred to Dr. William Price, an orthopaedic surgeon. Tr. 44. Dr. Price's medical notes indicate that claimant's back condition first became apparent within the six months prior to November 1992 and that the pain associated with said condition "is increased with sitting [and] . . . [d]ecreased with standing [and] . . . with lying." Tr. 161. Dr.

3

Price also noted that claimant "has a normal heel and toe gait although slightly antalgic."[1] Id. In light of his findings, Dr. Price ordered a Magnetic Resonance Imaging (MRI) scan of claimant's back and spine. Tr. 44, 161.[2]

An MRI was conducted on December 1, 1992, and revealed a "small, right [herniated nucleus pulposus] of the L5-S1 intervertebral disc" as well as "[d]iffuse posterior bulging of the L3-4 and L4-5 intervertebral discs." Tr. 153. Claimant returned to Dr. Price on December 4, 1992, the alleged onset of disability, complaining of "[s]evere back pain and bilateral leg pain . . . with numbness into the feet." Tr. 162. Hills stated to Dr. Price that he "cannot deal with his pain any more" but deferred making a decision regarding surgery pending the outcome of chiropractic care. Id.

On December 17, 1992, Hills was examined by Michael Guidi, an osteopathic physician in Massachusetts, who noted that claimant "gets sciatic pain on a daily basis . . . [which] runs down both legs to the knees and then with a cramping sensation in the lower legs." Tr. 164. Dr. Guidi recommended that claimant

_____

[1]"Antalgic" is defined as "counteracting or avoiding pain, as a posture or gait assumed so as to lessen pain." DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 90 (28th ed. 1994).

[2]At this point, claimant inquired whether he could return to work, to which Dr. Price opined, "I think he can, however it may give him some additional pain." Tr. 161.

4

get "bed rest as much as possible" and that he seek further care from the New England Baptist Hospital.  Id.

Dr. Cataldo corroborated the MRI diagnosis at a December 23, 1992, appointment, indicating that claimant suffered from a "small" herniated nucleus pulposus L5-S1 and asserted that said condition could be controlled or improved with "physical therapy and possible surgery."  Tr. 154.  Although limited by "no ability for long periods of standing," Dr. Cataldo felt that, at most, a "Back program or Surgery would allow up to 6 mo[nths] disability."  Id.  In light of these limitations, Dr. Cataldo recommended vocational rehabilitation.  Id.

Claimant returned to Dr. Price on January 6, 1993.  Although he felt Dr. Guidi "did not actually do that much for him," claimant expressed an interest in seeing a second osteopath.  Tr. 162.  Since Hills wanted to "continue conservative care," Dr. Price recommended he begin to see Dr. David Lewis at the Spine Center in Manchester, New Hampshire.  Id.[3]

On January 8, 1993, claimant's wife Wendy telephoned Dr. Guidi and indicated that claimant continued to have pain and numbness in his feet upon ambulation, but that such numbness

_____

[3]Despite its thorough review of the administrative record, the court notes that none of the medical notes contained therein are attributed to said Dr. Lewis, and thus it is unclear whether claimant ever sought treatment from same.

5

decreased with bed rest. Tr. 164. When asked by Wendy Hills to provide an "out of work note" for her husband, Dr. Guidi deferred, recommending that claimant speak with Dr. Cataldo about such a note. Id.

Although claimant was referred to a Dr. Lewis, it appears from the record that he received further osteopathic treatment from a Dr. William Kirmes instead. Tr. 184. Specifically, Hills visited Dr. Kirmes at his office on January 15 and 25, 1993, and February 9, 1993. Tr. 182-84. As of the February 9 office visit, Dr. Kirmes noted that Hills was "getting gradually better." Tr. 184.[4]

Claimant sought further chiropractic care from Londonderry Chiropractic between March and August 1993. Tr. 186-89. During the March 17, 1993, visit, claimant indicated that he had difficulty "sitting, sleeping, [and] standing" as well as lower back and leg pain. Tr. 188. At his June 16, 1993, visit, claimant stated that his lower back was "very sore" and that he had "difficulty getting up." Id. The final entry in Londonderry Chiropractic's records are for an August 9, 1993, visit wherein

---

[4]Claimant's attorney wrote to Dr. Kirmes in September 1993 and requested a "Medical Assessment of Ability to Do Work Related Activities." Dr. Kirmes did "not feel comfortable" filling out such a form given the fact that "such a long period of time has passed since [Hills] was last here." Tr. 184. Kirmes further indicated that given his impression of claimant's condition at the February 9, 1993, office visit, he "assumed, having not seen [Hills] for follow up again, that he was doing all right." Id.

6

claimant again complained of lower back pain.  Id.

During September and October of 1993, claimant received additional osteopathic treatment from Dr. David I. Steinberg. Tr. 47-48.[5]  Dr. Steinberg first examined claimant on September 9, 1993, and noted the following:

> [Hills] is alert and in no acute distress. He does exhibit a moderate amount of pain behavior.  His gait on a flat surface is normal.  He is able to toe and heel walk but does complain of increased pain across the low back.  Examination of the LS spine reveals moderate tenderness on very light palpation in the entire bilateral lumbosacral paravertebrals without spasm or trigger points . . . .  Motor exam reveals normal symmetric bulk and tone without evidence of focal motor weakness.

September 9, 1993, treatment notes of Dr. David I. Steinberg at 2 (attached as Attachment A to Claimant's Motion to Reverse and Remand).  During the course of this examination, Hills indicated that "[h]is weekly routine includes walking one day a week and riding a bicycle 1 day a week."  Id.  Hills further indicated that a "typical day involves sitting for 4 hours."  Id.  In addition, Hills informed Dr. Steinberg that "[h]e is independent

---

[5]The court notes that the administrative record does not contain the treatment notes of Dr. Steinberg.  However, claimant indicates that these materials were sent to the Appeals Council, Motion to Reverse and Remand at 4, and has provided copies of said notes as Attachment A to his Motion to Reverse and Remand. The court assumes, therefore, that their absence from the complete administrative record is due to inadvertence or oversight and will consider such notes in its review.

in all his [activities of daily living] and self care." Id.[6]

Dr. Steinberg concluded from the examination that claimant suffers from "[m]echanical low back pain superimposed on probable [Degenerative Disc Disease] and compounded by exogenous obesity,"[7] id., and thus prescribed outpatient physical therapy, id.

At an October 4, 1993, visit, Hills indicated that he "had been participating in an active [physical therapy] program . . . [but] noted minimal improvement in his symptoms." Steinberg Notes at 4. The physical therapy sessions left claimant "sore for several days" thereafter and "then his symptoms return to

_____

[6]The court pauses here to note that claimant's testimony before the ALJ, only three weeks after this initial examination by Dr. Steinberg, completely contradicts this prior admission:

> Q   Is there anything else Mr. Hills that you feel is important before we turn to other testimony that we haven't asked you about your condition?
> A   No, not really.  I just wanted just to make it clear that, you know, I do have a lot of problems with like personal things like going to the bathroom and wiping yourself afterwards.  I have a hard time doing that.

Tr. 59.

[7]Hills is approximately 5'9" tall and has regularly weighed between 245 and 270 pounds.  Tr. 54.  All of claimant's treating/ examining physicians have suggested a weight reduction plan as part of his overall therapy, id., and the nontreating/nonexamining physicians have identified obesity as a secondary diagnosis to claimant's degenerative disc disease, Tr. 76, 84, 137.

8

base line." Id. Although Hills continued to complain of "pain across the low back with intermittent radiation into the bilateral buttocks regions," he was not taking any medication at that time. Id. Further, although Hills appeared alert, in no acute distress, and walked with a normal gait, he did so "with the trunk forward flexed 45°" and indicated that he could not straighten up. Id.

Hills saw Dr. Steinberg for the last time on October 18, 1993. As of that date, Hills had completed formal outpatient physical therapy "after achieving all his goals." Steinberg Notes at 5. Hills had been instructed regarding an independent exercise program and indicated to Dr. Steinberg that he "continues with this program on a daily basis." Id.[8] Although Hills continued to "complain of pain across the low back with intermittent radiation into the bilateral buttocks regions," he undertook "walks 3-4 days per week for 10 minutes" and was observed by Dr. Steinberg as "alert and in no acute distress." Id. Further, he was "ambulatory in a neutral position today," id., and was not walking "with the trunk forward flexed as he had been previously observed to do," id. Dr. Steinberg thus terminated his formal treatment of claimant, opting instead to

_____

[8]Hills further related that he was "waiting for social security to go through" and thus remained unemployed without any present vocational goals. Steinberg Notes at 5.

9

see him as circumstances may require and noting that he "asked Mr. Hills to continue to increase his aerobic conditioning and to consider swimming at the Y or other facility and to continue on weight reduction."  Id.

b.  Nonexamining/Nontreating Physicians

Dr. Burton A. Nault, a Disability Determination Services medical consultant, examined claimant's medical records on January 29, 1993, and estimated that claimant had the residual functional capacity to lift and carry up to twenty (20) pounds occasionally and up to ten (10) pounds frequently; to stand, sit, or walk for up to six hours in an eight-hour day; and to push or pull without limitation.  Tr. 79.  Although claimant was under no manipulative, visual, communicative, or environmental limitations, Dr. Nault did conclude that claimant experienced occasional postural limitations regarding climbing, stooping, kneeling, crouching, and crawling.  Tr. 80.  Based on the foregoing, Dr. Nault found that

> the claimant is considered to be totally
> disabled while undergoing physiotherapy for
> an acute low back process, now chronic.
> Improvement is anticipated and ongoing at the
> present time.  A Listings level impairment is
> not supported.  It is reasonable to assume
> that the claimant will return to at least a
> light work activity within 12 months of his
> AOD [alleged onset date].

Tr. 84.

Discussion

<u>1. Standard of Review</u>

This court is empowered, pursuant to 42 U.S.C. § 405(g), to "enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Secretary, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g) (Supp. 1994).

When reviewing a Social Security disability determination, the factual findings of the Secretary "shall be conclusive if supported by 'substantial evidence.'" <u>Irlanda Ortiz v. Secretary</u>, 955 F.2d 765, 769 (1st Cir. 1991) (quoting 42 U.S.C. § 405(g)). The Supreme Court has instructed that the term "substantial evidence" means "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971) (quoting <u>Consolidated Edison Co. v. NLRB</u>, 305 U.S. 197, 229 (1938)); <u>Rodriquez v. Secretary</u>, 647 F.2d 218, 222 (1st Cir. 1981).

However, substantial evidence "is something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an

11

administrative agency's finding from being supported by substantial evidence." Consolo v. Federal Maritime Comm'n, 383 U.S. 607, 620 (1966) (citing NLRB v. Nevada Consolidated Copper Corp., 316 U.S. 105, 106 (1942)). Moreover, the decision of the Secretary must be affirmed, "even if the record arguably could justify a different conclusion, so long as it is supported by substantial evidence." Rodriguez Pagan v. Secretary, 819 F.2d 1, 3 (1st Cir. 1987), cert. denied, 484 U.S. 1012 (1988) (citing Lizotte v. Secretary, 654 F.2d 127, 128 (1st Cir. 1981)).

It is incumbent on the Secretary "to determine issues of credibility and to draw inferences from the record evidence." Irlanda Ortiz, supra, 955 F.2d at 769 (citing Rodriguez, supra, 647 F.2d at 222). Moreover, "the resolution of conflicts in the evidence is for the Secretary, not the courts." Id.; Evangelista v. Secretary, 826 F.2d 136, 141 (1st Cir. 1987); see also Sitar v. Schweiker, 671 F.2d 19, 22 (1st Cir. 1982); Burgos Lopez v. Secretary, 747 F.2d 37, 40 (1st Cir. 1984).

Since determinations regarding factual issues and the credibility of witnesses are entrusted to the Secretary, whose findings should be accorded great deference, see, e.g., Frustaglia v. Secretary, 829 F.2d 192, 195 (1st Cir. 1987), the court "'must uphold the Secretary's findings . . . if a reasonable mind, reviewing the evidence in the record as a whole,

12

could accept it as adequate to support his conclusion.'" <u>Irlanda
Ortiz</u>, <u>supra</u>, 955 F.2d at 769 (quoting <u>Rodriguez</u>, <u>supra</u>, 647 F.2d
at 222).


## 2. The ALJ's Findings

In his written report dated December 16, 1993, the ALJ made
the following findings:

>    2. The claimant has not engaged in
>    substantial activity since December 4, 1992.
>    3. The medical evidence establishes that
>    the claimant has severe small L5-S1 herniated
>    nucleus pulposus at L3-4 and L4-5
>    intervertebral discs, but that he does not
>    have an impairment or combination of
>    impairments listed in, or medically equal to
>    one listed in Appendix 1, Subpart P,
>    Regulations No. 4.
>    4. The claimant's hearing testimony was
>    not entirely credible with respect to his
>    allegations of pain because as evaluated
>    under the criteria of Social Security Ruling
>    88-13 and the <u>Avery</u> court order, the
>    allegations supported a determination that
>    the claimant had sufficient residual
>    functional capacity for work activity in the
>    light range.
>    5. The claimant has the residual
>    functional capacity to perform the physical
>    exertion and nonexertional requirements of
>    work except for the exertional requirements
>    of very heavy, heavy, medium, and the full
>    range of light work and the nonexertional
>    limitations of no bending or performing
>    postural activities and no sitting, standing
>    or walking for more than 30 minutes (20 CFR
>    404.1545 and 416.945).
>    6. The claimant is unable to perform his
>    past relevant work as a bus driver for the
>    handicapped.

13

>7.  The claimant's residual functional
>capacity for the full range of light work is
>reduced by no bending or performing postural
>activities and no sitting, standing or
>walking for more than 30 minutes.

Tr. 17-18.

In light of the above, the ALJ concluded that "[s]ince there are a significant number of light jobs existing in the national economy that the claimant could perform, the undesigned therefore finds the claimant not disabled within the meaning of the Social Security Act."  Tr. 16.  Claimant raises two issues with respect to the ALJ's determination; namely, (1) that the ALJ impermissibly inferred a light work residual functional capacity (RFC) from the medical evidence and (2) the testimony of the vocational expert (VE) does not support a Step 5[9] denial.

### a.  The Light Work RFC

Based on "the clinical findings and functional assessments of the claimant's treating physicians," the ALJ concluded that "the claimant can do light work."  Tr. 15.[10]  Claimant contends

---

[9]For an overview of the five-step sequential evaluation process employed in determining disability status, see infra note 14.

[10]The regulations define light work as follows:

>Light work involves lifting no more than 20
>pounds at a time with frequent lifting or
>carrying of objects weighing up to 10 pounds.

14

that "[a] review of the medical records . . . provided show that none of the various treating physicians felt [I] could return to work," Plaintiff's Motion to Reverse and Remand at 10, and further, "this failure [by the ALJ] to identify what medical records and what residual functional capacity assessment supported his finding deprives his decision of substantial evidence," id. at 10-11.

Although the "ALJ is not qualified to interpret raw medical data in functional terms," Perez v. Secretary, 958 F.2d 445, 446 (1st Cir. 1991) (per curiam) (citations omitted), "[t]his principle does not mean . . . that the Secretary is precluded from rendering common-sense judgments about functional capacity based on medical findings . . . ." Gordils v. Secretary, 921 F.2d 327, 329 (1st Cir. 1990). Such "common-sense judgments

---

Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b) (1994).

15

about functional capacity" are permissible "as long as the Secretary does not overstep the bounds of a lay person's competence and render a medical judgment." Id. at 329.

In ascribing a "light work" RFC to the claimant, the ALJ did not merely rely on his own "common-sense" judgment of the medical evidence, but also considered the RFC assessment completed by Dr. Nault, as well as other evidence in the record.[11] Although "written reports submitted by non-testifying, non-examining physicians cannot alone constitute substantial evidence," Rose v. Shalala, 34 F.3d 13, 18 (1st Cir. 1994), the First Circuit has noted that "this is not an ironclad rule," id. (citing Berrios Lopez v. Secretary, 951 F.2d 427, 431 (1st Cir. 1991) (per curiam); Gordils, supra, 921 F.2d at 328). Furthermore, "the amount of weight that can properly be given the conclusions of non-testifying, non-examining physicians '"will vary with the circumstances, including the nature of the illness and the information provided the expert."'" Rose, supra, 34 F.3d at 18 (quoting Berrios Lopez, supra, 951 F.3d at 431 (quoting Rodriquez v. Secretary, 647 F.2d 218, 223 (1st Cir. 1981))).

Supplementing the Nault RFC is the medical opinion of Dr.

_____

[11]Indeed, claimant's ability to meet the lifting requirements of the light work classification is perhaps best evidenced by the claimant's indication that his contribution to overall household maintenance is satisfied, at least in part, by removing small bags of trash. Tr. 107.

16

Cataldo, claimant's own physician, who reported on January 4, 1993, after examining Hills on December 23, 1992, that the only limitation affecting claimant was a prohibition against long periods of standing. Tr. 154. The March 7, 1994, statement of Dr. Albert C. Northcutt[12] that "at this point in time Mr. Hills is not capable of performing any activity that he is trained for," Tr. 204, is of no moment.

As an initial matter, such conclusory statements regarding disability are insufficient to undercut the evidentiary significance of the findings of nontestifying, nonexamining physicians. See Tremblay v. Secretary, 676 F.2d 11, 13 (1st Cir. 1982) (per curiam) (affirming the Secretary's adoption of the findings of a nontestifying, nonexamining physician, and permitting those findings by themselves to constitute substantial evidence, in the face of treating physician's conclusory statement of disability).

Secondarily, yet of equal relevance, the finding of a light work RFC and the opinions of the examining physicians are in no way inconsistent. Dr. Cataldo indicated that claimant should be referred to vocational rehabilitation. Tr. 154. Likewise, Dr. Northcutt merely opined that claimant remains unable to perform

---

[12]Dr. Northcutt practices at the Derry Medical Center and seems to have taken the place of Dr. Cataldo as claimant's family physician.

"any activity that he is trained for."  Tr. 204.  What both opinions implicitly recognize is that, rather than being completely disabled as that term is defined under the Act, claimant remains capable of performing work that exists in the national economy, but entry into such fields requires some degree of vocational retraining.

In consequence thereof, the court hereby finds the ALJ's determination of a light work RFC to be supported by substantial evidence, and thus said determination is accordingly affirmed.[13]

### b.  Step 5 Denial

Disability is defined under the Act as the "inability to engage in any substantial gainful activity by reason of any

---

[13]Furthermore, the court notes that it is not necessary to find substantial evidence to support a finding that claimant could perform light work in order to affirm the ALJ's ultimate determination of "not disabled."  Claimant was found not disabled based on both Rule 202.21 and Rule 202.22 of the light work grid, which encompasses subsidiary findings that claimant was below forty-nine years old, had a high school education or more, had done skilled or semi-skilled work that either was transferable or not, and could perform light work.  Claimant only takes issue with the last finding.  However, if the court substituted a capacity to perform sedentary work for light work, the result under the grid remains unchanged.  See Rules 201.28 and 201.29 (indicating a finding of "not disabled" under the sedentary work grid).  Thus, the court's conclusion "that there is substantial evidence to support a finding that claimant's exertional impairment[s] [do] not preclude performance of the full range of sedentary work is adequate to sustain the Secretary's determination under the grid."  Gordils, supra, 921 F.2d at 329-30.

medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A); <u>see also</u> <u>Bowen v. Yuckert</u>, 482 U.S. 137, 140 (1987). Further, the Act provides that an individual

> shall be determined to be under a disability
> only if his physical or mental impairment or
> impairments are of such severity that he is
> not only unable to do his previous work but
> cannot, considering his age, education, and
> work experience, engage in any other kind of
> substantial gainful work which exists in the
> national economy, regardless of whether such
> work exists in the immediate area in which he
> lives, or whether a specific job vacancy
> exists for him, or whether he would be hired
> if he applied for work.

42 U.S.C. § 423(d)(2)(A).

In view of this legislative mandate, the Secretary has established a five-step sequential evaluation process which first considers the disability claimant's medical impairment and then whether that impairment precludes him from engaging in "substantial gainful activity." <u>See</u> 20 C.F.R. § 404.1520(b)-(f) (1994); <u>see also</u> <u>Yuckert</u>, <u>supra</u>, 482 U.S. at 140-42; <u>Goodermote v. Secretary</u>, 690 F.2d 5, 6 (1st Cir. 1982).[14] If the claimant

_____

[14]This five-step analysis considers the following:

(1) is claimant engaged in substantial gainful activity?; if so, a not disabled determination automatically ensues;

19

has established the threshold disability requirement, the burden then shifts to the Secretary to prove that other work is available in the national economy which the claimant could do. See Dudley v. Secretary, 816 F.2d 792, 793 (1st Cir. 1987) (per curiam) (citing Goodermote, supra, 690 F.2d at 6-7). Should the ALJ, after adhering to the sequential analysis set forth in the regulations, reach a conclusion that is supported by substantial evidence, such a finding is then considered conclusive. See Goodermote, supra, 690 F.2d at 7-8; see also 42 U.S.C. § 405(g).

At Step 5 of the sequential analysis, the ALJ concluded

> that the claimant's allegations of pain are
> not entirely credible when measured under the
> criteria of Avery and Social Security Ruling
> 88-13 and leaves the claimant with the
> residual functional capacity for light work
> as that work is defined at 20 CFR 404.1567(b)
> and 20 CFR 416.967(b). The undersigned
> further finds that the claimant would be

_____

(2) does claimant have a severe impairment--an impairment which significantly limits his physical or mental capacity to perform basic work-related functions?; if not, the claimant is automatically not disabled;
(3) does the impairment meet or equal an impairment indicated in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1?; if so, claimant is automatically disabled;
(4) does the impairment prevent claimant from performing past relevant work; if not, claimant is considered not disabled; and
(5) whether the impairment prevents claimant from doing any other work that exists in the national economy?; if not, claimant is determined to be not disabled.

20 C.F.R. § 404.1520(b)-(f); Goodermote, supra, 690 F.2d at 7.

20

> required to avoid bending and performing
> postural activities and is limited to
> sitting, standing or walking for no more than
> 30 minutes.

Tr. 15. Applying these criteria alone to the Medical Vocational Guidelines contained in 20 C.F.R., Appendix 2, Subpart P, resulted in a "not disabled" finding pursuant to Rules 202.21 and 202.22 of the light work grid. However, because these rules do not take into account the claimant's nonexertional impairments, these rules can only be used as a framework in determining the claimant's disability. See Rose, supra, 34 F.3d at 19; see also Sherwin v. Secretary, 685 F.2d 1, 4 (1st Cir. 1982) ("Grid will offer only guidance--it will not determine 'disability'--in borderline cases or where nonexertional, or additional, disabilities are at issue."), cert. denied sub nom., Picard v. Secretary, 461 U.S. 958 (1982).

Further evaluation of claimant's condition, and the availability of other work in the national economy, was conducted by the ALJ through his examination of the VE. In the hypotheticals posed to the VE, the ALJ depicted a younger worker, age thirty-one, with a high school education whose past work experience included both skilled and semi-skilled positions. Tr. 66-67. Said individual was further constrained by the following exertional limitations: (1) could not lift and carry more than twenty (20) pounds at any one time; (2) unable to bend at waist

21

to pick up objects off the floor; (3) could not climb ladders, nor stoop, kneel, crouch, or crawl; and (4) had difficulty remaining in one position for a long period of time without the opportunity to change position. Tr. 67.

Assuming the above, the ALJ added the further limitation that said individual would only be able to either sit or stand for thirty (30) minutes at any one time before needing to alternate his position. Id. The VE testified that although there were no skilled or semi-skilled positions available to an individual so limited, three unskilled positions, listed as follows, existed: (1) toll collector, 160 positions in southern New Hampshire, 14,000 nationally; (2) security guard, 165 positions in southern New Hampshire, 87,000 nationally; and (3) fast food order clerk, 240 positions in southern New Hampshire, 84,000 nationally. Tr. 68-69.[15]

Changing the hypothetical, the ALJ then posited an individual who, in addition to the limitations hereinabove set forth, was further limited by the need to "lie down or change their position so that they could recline as well as being able to get up and down . . . ." Tr. 69. This period of reclining

---

[15]The court notes that with respect to the occupations identified by the VE, the toll collector position is classified at the light exertional level, whereas both the security guard and fast food order clerk are classified at the sedentary level. Tr. 68-69.

might last anywhere from thirty to forty-five (30-45) minutes at a time and might unpredictably occur in either the morning or the afternoon, or both. Id. An individual burdened with these limitations, according to the VE, would not be able to perform the requirements of the three aforementioned occupations. Id.

In light of the lack of medical evidence to suggest an objective basis for totally disabling pain, the ALJ, who observed claimant's demeanor at the hearing, was entitled to make a credibility determination regarding claimant's pain, Da Rosa v. Secretary, 803 F.2d 24, 26 (1st Cir. 1986) (per curiam), and further to conclude that his pain did not disable him from performing sedentary to light exertional activities, Perez, supra, 958 F.2d at 448. As noted previously, issues of fact and witness credibility are entrusted to the Secretary, and such findings are appropriately accorded great deference. See Frustaglia, supra, 829 F.2d at 195.

This court is empowered to scrutinize the record and complete an independent assessment of the evidence. See 42 U.S.C. § 405(g). Pursuant to such review, the court finds that "'a reasonable mind . . . could accept [the ALJ's findings] as adequate to support his conclusion.'" Irlande Ortiz, supra, 955 F.2d at 769 (quoting Rodriguez, supra, 647 F.2d at 222). In light of the court's further finding that the ALJ's conclusions

23

are supported by substantial evidence on the record, claimant's motion to reverse and remand is accordingly denied.

## Conclusion

For the reasons set forth herein, the court grants defendant's motion to affirm the decision of the Secretary (document 13) and denies the claimant's motion to reverse (document 10).

SO ORDERED.

_____
Shane Devine, Senior Judge
United States District Court

April 6, 1995

cc:  Raymond J. Kelly, Esq.
     David L. Broderick, Esq.