**Matthew B. SHAUGHNESSY, Plaintiff,**

v.

**Michael ASTRUE, Commissioner of Social Security, Defendant.**

**Civil Action No. 2007–11399–RBC.**

United States District Court, D. Massachusetts.

March 31, 2011.

Michael J. Kelley, Law Office of Michael J. Kelley, Boston, MA, for Plaintiff.

Rachael S. Rollins, United States Attorney's Office, Boston, MA, for Defendant.

*MEMORANDUM AND ORDER ON PLAINTIFF'S MOTION TO REVERSE THE DECISION OF THE COMMISSIONER (# 14) AND DEFENDANT'S MOTION FOR ORDER AFFIRMING THE DECISION OF THE COMMISSIONER (# 17)*

COLLINGS, United States Magistrate Judge.

## I. Introduction

On November 3, 2004, Matthew B. Shaughnessy ("the plaintiff" or the "claimant") filed a Title II application for disability and disability insurance benefits, as well as a Title XVI application for supplemental security income benefits. (T.R. at 15) The claims were denied both initially, (T.R. at 302) and upon reconsideration. (T.R. at 306) The plaintiff then requested a hearing before an administrative law judge ("ALJ"). The hearing was held on October 16, 2006. (T.R. at 311) The plaintiff was represented by counsel. *Id.* On January 25, 2007, the ALJ issued a decision denying Social Security benefits. (T.R. at 21) The plaintiff requested review of the ALJ's ruling by the Appeals Council but his request was denied. (T.R. at 6) The Appeals Council's denial rendered the ALJ's decision final pursuant to 20 C.F.R. § 404.1281, and made it ripe for judicial review. *See id.*

On July 31, 2007, the plaintiff, pursuant to 42 U.S.C. § 405(g), filed a complaint in this Court against Michael Astrue, Commissioner, Social Security Administration ("Commissioner" or "SSA"), seeking review of the final determination that he was not disabled and, consequently, not entitled to Social Security disability benefits. (# 1) The Commissioner requested that the case be remanded "for good cause" because the ALJ's decision had been misplaced. (# 7) Judge Gorton granted the motion on May 21, 2008, and the case was remanded for further administrative proceedings. On October 9, 2008, the SSA moved to reopen the case after locating what had been misplaced and generated a certified copy of the record. (# 8) Judge Gorton granted the motion on October 29, 2008, and the case was reopened. On November 2, 2009, the Commissioner duly filed an answer to the complaint (# 9) together with the administrative record. (# 12) In accordance with 28 U.S.C. § 636(b)(1)(A), Judge Gorton referred the

captioned matter to the undersigned magistrate judge for a report and recommendation but the parties thereafter consented to have the case reassigned to undersigned magistrate judge pursuant to 28 U.S.C. § 636(c). (# 21)

## II. The ALJ's Decision

Plaintiff was born March 3, 1984. He applied for benefits on November 3, 2004, alleging that his disability commenced on December 30, 2003. (T.R. 15) After hearing, the ALJ ultimately determined that the plaintiff "... has not been under a disability within the meaning of the Social Security Act from December 30, 2003" to January 25, 2007, the date of the ALJ's decision. (T.R. 15)

In her decision, the ALJ found that the plaintiff had not engaged in any gainful employment since December 30, 2003 and had severe impairments, i.e., "... affective and anxiety-related disorders and history of borderline intellectual functioning." (T.R. 17) The ALJ found that the plaintiff did not have "... an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." (T.R. 19) The ALJ further found:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform work at all exertional levels. He can understand, remember and carry out simple instructions. He can concentrate and persist to task for two hour intervals during an eight-hour work day. He is able to relate adequately to supervisors, coworkers and the general public.

(T.R. 19)

Lastly, the ALJ found:

> Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that

exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1560(c), 404.1566, 416.960(c) and 416.966).

(T.R. 21)

This last finding reflects the ALJ's use of the Medical–Vocational Guideline, otherwise knows as the Grid, to determine that the claimant was not disabled. (T.R. at 21).

## III. The Plaintiff's Challenges to the ALJ's Determination

### A. The Plaintiff's Contentions re: His Ability to Work

The plaintiff contends that the severe impairments which the ALJ found he had, i.e., "... affective and anxiety-related disorders and a history of borderline intellectual functioning," rendered him unable to work because of his inability to concentrate and to comprehend instructions given to him by his superiors. He notes the results of a psychiatric review conducted by Dr. Marsha Tracy on May 24, 2005 in which she found that his behavioral and mental distortion had a minimal effect on his daily-living activities, had no effect on his "social functioning" and had a moderate effect on "maintaining concentration, persistence, or pace." (T.R. at 213) Dr. Tracy further found that the plaintiff would be "able to ... [c]oncentrate and persist on simple tasks or complex hands on tasks for 2 hr. intervals per 8 hr. day, in quiet work settings." (T.R. 221)

Two months later, Dr. J. Kellerman also concluded that the plaintiff's condition would have a moderate effect on "maintaining concentration, persistence, or pace" (T.R. 239) Dr. Kellerman further opined that "[t]he claimant is able to carry out simple tasks for extended periods (2 hours at a time) within acceptable parameters for

attention, pace and persistence." (T.R. 226)

During the hearing, plaintiff described his most recent job history to support his contention. He testified that the last job he had was as a courtesy technician at Jiffy Lube where he vacuumed cars and added air pressure. (T.R. 316–317) He was fired from that job because of continuous comprehension problems which led to him asking too many question. (T.R. 317–318) He and the manager would then argue, which ultimately led to his termination. (T.R. 318)

Prior to the job at Jiffy Lube, the plaintiff held a job as a grocery bagger for five months, his longest period of employment. (T.R. 318–319) He again cited his inability to comprehend the tasks assigned to him as the root cause of his termination. (T.R. 319)

### B. The Issue of the Vocational Expert's Testimony

■ Plaintiff's first argument is that "the ALJ without explanation rejected the Commissioner's own vocational expert's opinion that she [sic][1] was disabled based upon the restrictions set forth [by] the Commissioner's reviewing psychologists." (# 15 at 2) At the hearing, the vocational expert noted that the plaintiff's past work as a bagger and at Jiffy Lube was "medium, unskilled work." (T.R. 330) The ALJ, perhaps harking back to Dr. Tracy's and Dr. Kellerman's assessment that the plaintiff's disability caused a "functional limitation" in the form of "Difficulties in Main-

taining concentration, Persistence or Pace" and that that limitation was "moderate" (T.R. 213, 239), the ALJ put the following question to the vocational expert:

> ... [I]f you have somebody who has the high school education, same past relevant work as the claimant, is 22 years old ... looking for a disability from when he was 20. And he has a slight to moderate limitation on his ability to complete a normal work day and work week without interruptions from psychologically based symptoms. Can that person—and he can do heavy work. Can that person do past work of this gentleman?

(T.R. 331)

The vocational expert answered:

> I would say no, Your Honor, not if it's up to moderate, that would be one-third of the time and it would interfere with his ability to maintain employment.

> \*  \*  \*

> If it was slight, he would be able to do the past work because they were all unskilled positions.

(T.R. 331)

Plaintiff's counsel maintains that by disregarding the vocational expert's opinion that a "moderate" limitation would render plaintiff unable to maintain employment, the ALJ committed "significant legal error." (# 15 at 12)[2] It is true that the ALJ made no mention of the vocational expert's testimony in her opinion. Plaintiff's counsel cites a slew of cases as to why this was

---

1. For some unknown reason, plaintiff's counsel refers to the plaintiff as "she" in his papers. The plaintiff is male. The only explanation which the Court can surmise is that plaintiff's counsel, in writing his memorandum, recycled an older brief which he wrote on the same subject on behalf of a female client.

2. Plaintiff's counsel also suggests that the ALJ might have rejected the vocational expert's opinion because she did not accept Dr. Tracy's and Dr. Kellerman's assessment of the plaintiff's functional limitation as "moderate." (# 15 at 12) This suggestion is manifestly without merit. The ALJ found Dr. Tracy's and Dr. Kellerman's opinions to be "persuasive." (T.R. 20)

error, but all of those cases, cited on p. 12 of his Memorandum, Etc. (# 15), deal with the situation in which an ALJ with no medical training rejected a professional medical person's opinion. They are inapposite. But for another reason, plaintiff's counsel may have a point.

### C. The Issue of Reliance on the Medical–Vocational Guidelines (the Grid)

■ As stated, *supra*, the ALJ employed the Medical–Vocational Guidelines, otherwise knows as the Grid, to meet the Commissioner's burden of proving that there were jobs in the national economy which the plaintiff could perform. The use of the Grid is appropriate "where there is a nonexertional limitation that does not significantly affect the claimant's ability to engage in substantial gainful activity ...". *Guyton v. Apfel,* 20 F.Supp.2d 156, 163 (D.Mass., 1998) (*citing Ortiz v. Sec'y of Health and Human Services,* 890 F.2d 520, 528 (1 Cir., 1989)). But if the claimant *has* nonexertional limitations that do affect an ability to engage in substantial gainful activity, the situation is different.

The issue then as to whether the ALJ could employ the Grid depends on whether the "nonexertional limitation [is] found to impose no significant restriction on the range of work a claimant is exertionally able to perform." *Ortiz,* 890 F.2d at 524 (citations omitted). While the ALJ found that "[t]he claimant's ability to perform work at all exertional levels has been compromised by nonexertional limitations", she further found that "... these limitations have little or no effect on the occupational base of unskilled work at all exertional levels," (T.R. 21), and that "... the claimant has the residual functional capacity to perform work at all exertional levels." (T.R. 18)

The ALJ relied on Social Security Ruling 85–15 in finding no disability. (T.R. 21) The First Circuit noted that "Social Security Ruling (SSR) 85–15 contains two sets of mental capabilities required for unskilled work. The first group includes the abilities to understand, remember and carry out simple instructions, to respond appropriately to the normal work environment and to deal with changes in a routine work situation." *Irlanda Ortiz v. Sec'y of Health and Human Services,* 955 F.2d 765, 769 (1 Cir., 1991). "The second inquiry concerns a claimant's ability to cope with the demands of any work environment. SSR 85–15 states that these demands include the need to be punctual and to attend work on a regular basis, the ability to accept supervision and the capacity to remain in the work place for an entire day." *Ortiz,* 955 F.2d at 770.

As to the first inquiry, the ALJ found that the plaintiff retained these skills, and this finding is supported by substantial evidence in the record. The ALJ's response to the second inquiry is problematic.

As noted, *supra,* both Dr. Tracy, a reviewing DDS psychiatrist and Dr. Kellerman, a reviewing DDS psychologist, doctors whose opinions the ALJ asserted were persuasive, found the plaintiff to have a moderate degree of limitation with respect to difficulties in maintaining concentration, persistence, or pace. Both concluded that the plaintiff could persist on simple tasks for two hour intervals. As further noted, *supra,* the vocational expert testified that if a person had a moderate limitation on his ability to complete a normal work day, it would interfere with his ability to maintain employment.

The First Circuit has written on numerous occasions as to when and when not the ALJ may rely on the Grid in this type of situation:

Under the case law, it is appropriate for the Secretary to rely upon the grid to bar disability status where a claimant is within the exertional limitations and the admitted mental impairments have only a slight effect on the availability of work. *Heggarty v. Sullivan,* 947 F.2d 990, 996 (1st Cir.1991). 'If a non-strength impairment, even though considered significant, has the effect only of reducing that occupational base marginally, the Grid ... can be relied on exclusively....' *Ortiz v. Sec'y of Health & Human Servs.,* 890 F.2d 520, 524 (1st Cir.1989). The ALJ's determination thus presents two questions for review: whether the ALJ acted properly in crediting some experts' testimony over others', and if so whether the credited portions of the medical evidence were sufficient to permit the ALJ to rely solely on the grid.

\* \* \*

The second question is more difficult. The question of the impact of Roman's condition on the availability of work is one on which the Secretary bears the burden of proof, *Vazquez v. Sec'y of Health & Human Servs.,* 683 F.2d 1, 2 (1st Cir.1982), and under Ortiz the Secretary may use the grid as a shortcut to denial of disability only if the impairments do no more than marginally erode the range of work available to the applicant in an established work category. 890 F.2d at 524.

*Roman–Roman v. Commissioner of Social Security,* 114 Fed.Appx. 410, 411–412 (1 Cir., 2004) *(per curiam ).*

The same principle was reiterated in 2006:
... the use of the grid is permissible only if a claimant's nonexertional limitations do not impose significant restrictions on the range of work that the claimant is exertionally able to perform. *Id.* In situations where a nonexertional impairment does 'significantly affect' a claimant's capacity to perform the full range of jobs she is otherwise exertionally capable of performing, 'the [Commissioner] must carry [her] burden of proving the availability of jobs in the national economy by other means, typically through the use of a vocational expert.' *Id.* (internal quotation marks and citations omitted).

*Candelaria v. Barnhart,* 195 Fed.Appx. 2, 3 (1 Cir., 2006) *(per curiam ). See also Valentin–Nieves v. Astrue,* 2009 WL 3160972, \*8 (D.P.R., Sept. 28, 2009).

The ALJ found that the plaintiff's "... non-exertional limitations have little or no effect on the occupational base of unskilled work." (T.R. 21) But in so doing, she answered only the first inquiry proscribed by Social Security Ruling 85–15 finding that:

[t]the [plaintiff] retains the ability to understand, remember and carry out simple instructions, make simple work-related decisions, respond appropriately to supervision, coworkers and usual work settings, and deal with changes in a routine work setting.

(T.R. 21)

The second question is whether the plaintiff is able "... to cope with the demands of any work environment" including "the need to be punctual and to attend work on a regular basis, the ability to accept supervision and the capacity to remain in the work place for an entire day." *Irlanda Ortiz,* 955 F.2d at 770. The ALJ made no findings as to this question. Although she found that the plaintiff "... can persist to task for two hour intervals during an eight-hour workday," (T.R. 18), there is a lack of substantial evidence in the record that this limitation (inability to persist to task for more than two hours intervals) does "... no more than margin-

ally erode the range of work available to the applicant in an established work category." *Roman–Roman,* 114 Fed.Appx. at 412 (citation omitted). Rather the opinions of Drs. Tracy and Kellerman together with the testimony of the vocational expert would seem to lead to the opposite conclusion, i.e., that plaintiff's nonexertional limitation imposes a significant restriction on the range of work a claimant is exertionally able to perform.

Accordingly, the end result is that the ALJ's general findings that ". . . pursuant to Social Security Ruling 85–15 the [plaintiff's] non-exertional limitations have little or no effect on the occupational base of unskilled work" is unsupported by substantial evidence. In the words of Judge Saris in a similar case, "[t]hus, the ALJ's finding of 'not disabled' and resulting denial of benefits based solely on the Grid was not appropriate." *Hannan v. Astrue,* 2009 WL 2853578, at *12 (D.Mass., Sept. 3, 2009).

## IV.   Conclusion and Order

For all of these reasons, it is OR-DERED that the Defendant's Motion for Order Affirming the Decision of the Commissioner (# 17) and the Plaintiff's Motion to Reverse the Decision of the Commissioner (# 14) be, and the same hereby are DENIED. Pursuant to sentence four of 42 U.S.C. § 405(g), judgment shall enter REMANDING this matter to the Secretary for further proceedings consistent with the within Memorandum and Order.