UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

**Jodie Marie Nickerson**

v.

Case No. 18-cv-559-PB
Opinion No. 2019 DNH 102

**Nancy A. Berryhill, Acting
Commissioner, Social Security
Administration**

## MEMORANDUM AND ORDER

Jodie Marie Nickerson challenges the Social Security
Administration's denial of her claims for Supplemental Security
Income and Disability Insurance Benefits.  She contends that the
Administrative Law Judge ("ALJ") erroneously evaluated the
opinion evidence of record in determining Nickerson's residual
functioning capacity ("RFC").  The Acting Commissioner, in turn,
seeks an order affirming the ALJ's decision.  Because the ALJ's
decision is adequately explained and supported by substantial
evidence, I affirm.

## I.   Procedural history

Nickerson first filed for benefits in November 2012,
seeking Disability Insurance Benefits and Supplemental Security
Income.  See Administrative Transcript ("Tr.") at 146-55.  She
alleged that she was disabled and had been unable to work since
November 2009, when she was 34, because of knee and ankle

injuries.  See id.  Her applications were denied, and she requested a hearing before an ALJ.  See Tr. 33, 105.

In May 2014, Nickerson, her attorney, and an impartial vocational expert appeared before an ALJ.  Tr. 33.  On July 7, 2014, the ALJ issued his written decision, concluding that Nickerson was not disabled at any time prior to the date of his decision.  Tr. 18-29.  Nickerson sought review by the Appeals Council, which denied her request for review.  Accordingly, the ALJ's denial of her applications for benefits became the final decision of the Commissioner, subject to judicial review.  See Tr. 561-63.  Nickerson filed a timely action in this court, asserting that the ALJ's decision is not supported by substantial evidence.

In January 2017, this Court reversed the ALJ's decision because his "decision to afford Dr. Swinburne's opinion little probative weight [was] not supported by substantial evidence." Nickerson v. Colvin, 2017 DNH 003, 2017 WL 65559, at *6 (D.N.H. Jan. 6, 2017).  Upon remand, Nickerson submitted new medical records concerning her March 2017 diagnosis for fibromyalgia. See Tr. 478.

A hearing was held before the same ALJ on January 29, 2018, at which a reviewing physician certified in internal medicine and rheumatology, and a vocational witness were present.  See

Tr. 483-516.  Nickerson was accompanied by her new counsel.  See Tr. 483.  The ALJ rejected Nickerson's claims in an April 19, 2018 decision, finding that Nickerson had not been disabled from her alleged onset date through the date of the ALJ's decision.  See Tr. 433-457.  Nickerson appealed that decision to this Court on June 20, 2018.

## II.  Background

Nickerson is a 44-year-old mother.  Tr. 340.  She has a daughter who is 19 and a son, 12.  See, e.g., id.  In her free time, she enjoys playing Scrabble and doing word searches.  Tr. 43.  Nickerson helps her son get to school, performs household chores, shops, cooks, and independently manages her finances.  Tr. 255.  Her daughter helps around the house, can prepare dinner and occasionally shops for groceries.  Tr. 508.  Nickerson has worked as an aide to children with disabilities, a bus monitor, and a bus driver.  See Tr. 38, 42, 499-500.  She left high school after the eleventh grade.  Tr. 38.

### A. Pain and fibromyalgia[1]

In February 2015, Nickerson visited Kimberly L. Dekker, MD to complain of joint pain.  Tr. 802.  She reported having pain in her shoulders, elbows, knees and ankles over the past four

---

[1] Additional aspects of Nickerson's medical history are outlined in Nickerson, 2017 WL 65559.  I include only those facts relevant to the present appeal.

3

months, and stated that her hands were the worst.  Id.  The next month, her primary care physician, Cynthia G. King, MD noted that her symptoms were "most consistent with fibromyalgia."  Tr. 798.  At her follow-up appointment in May 2017, Dr. King recorded that Nickerson found Cymbalta[2] helped with her joint pain, particularly "in her back and hips, less so in hands and knees."  Tr. 862.

Doctor King referred Nickerson to Dr. Nazli Conway for a rheumatology consultation in June 2017.  See Tr. 1035. Nickerson told Dr. Conway that she had unsuccessfully tried Lyrica[3] and Gabapentin[4] to treat her fibromyalgia, but that her current use of Cymbalta had been helping, notwithstanding occasional swelling in her hands and ankles.  Tr. 1035-36.  In that examination, Dr. Conway reported no swelling in Nickerson's wrists, elbows, and knees, did not observe swelling in her hands and ankles, and rated Nickerson as having "5/5" strength in her

---

[2] "Cymbalta is an antidepressant used for the treatment of fibromyalgia."  Swenson v. Berryhill, No. 16-1354-JAR, 2017 WL 3437689, at *3 n.20 (D. Kan. Aug. 10, 2017) (citation omitted).
[3] "Lyrica is indicated to treat fibromyalgia, diabetic nerve pain, and pain after shingles."  Want v. Express Scripts, Inc., 862 F. Supp. 2d 14, 18 (D.D.C. 2012) (citation omitted).
[4] "Gabapentin is used, inter alia, to control nerve pain, spinal injuries, fibromyalgia, and seizure disorders and is widely used to ease the symptoms of drug and alcohol detoxification."  Conklin v. Espinda, No. CV 19-00087 JMS-RT, 2019 WL 2397802, at *2 n.4 (D. Haw. June 6, 2019) (internal quotation marks and citation omitted).

upper and lower extremities.  Tr. 1037.  Doctor Conway did not make any medication changes, agreed with the use of Cymbalta, and told Nickerson she could "return to Rheumatology on an as-needed basis."  Tr. 1038.

In January 2018, reviewing physician Steven Caplin, MD, who is board certified in internal medicine and rheumatology, testified before the ALJ.  See Tr. 483, 487.  Referring to Nickerson's previous knee and ankle surgeries, Doctor Caplin testified that "the record is consistent with somebody who has had a lot of problems with their lower extremities."  Tr. 488.  Considering her knee and ankle problems, as well as her diagnosis of fibromyalgia, Dr. Caplin concluded that her conditions "would all be consistent with [being] limited to a sedentary work situation."  Tr. 491.  He also limited her to lifting five pounds frequently and ten pounds occasionally, not standing or walking for more than two to three hours per day, not sitting more than six hours per day, never climbing ladders, scaffolds, or ropes and never working around unprotected heights.  Tr. 491-92.  When asked by Nickerson's counsel whether her fibromyalgia would cause her to miss four days of work per month, Dr. Caplin responded that such a limitation would "[c]ertainly not [be] inconsistent . . . with the record, but, I can't be sure about it."  Tr. 494.

5

**B. Mental disorders**

Nickerson has complained of depression and anxiety. In January 2011, at her first appointment with Dr. King, she reported that her anxiety was worsening, primarily from a bad relationship that had recently ended. See Tr. 355. Doctor King prescribed Klonopin,[5] and later increased the dosage, to treat Nickerson's anxiety and depression. Tr. 341. In March 2011, she reported to Dr. King that her "panic attacks [had] improved [with] Klonopin." Tr. 353. The problem was not eliminated, however. In June 2011, she saw Dr. King to follow-up on her anxiety and depression, with her chief complaint being "panic attacks at work." See Tr. 340.

Objective psychological evaluations of Nickerson have generally been ordinary. In a May 2012 office visit, Dang Nguyen, PA-C, recorded that Nickerson was "well groomed & neatly dressed, oriented to all spheres, [with] affect and mood appropriate, normal interaction, good eye contact, [and] speech & thought process appropriate." Tr. 324. In March 2013, Dr. King observed that she was "oriented to all spheres, [with] affect and mood appropriate." Tr. 406. In a May 2017 visit

---

[5] "Klonopin is an anti-anxiety drug, generally used to control seizures and panic attacks." United States v. Sarver, No. CR 05-0673-JSW-JL, 2006 WL 2669006, at *4 (N.D. Cal. Sept. 18, 2006).

with Dr. King, Nickerson was "well groomed & neatly dressed, oriented to all spheres, [with] affect and mood appropriate." Tr. 863. And in a July 2015 appointment, Dr. King observed that she was "oriented to all spheres, [with] affect and mood appropriate, [and] normal interaction." Tr. 958.

Experts have concluded that Nickerson would be somewhat limited in the workplace. In January 2013, William Swinburne, Ph.D., conducted a comprehensive psychological profile of Nickerson on referral from the Social Security Administration. See Tr. 369-74. Doctor Swinburne diagnosed her with "major depressive disorder, recurrent, moderate," "pain disorder with both psychological factors and general medical conditions," and "panic disorder without agoraphobia." Tr. 372. He opined that in a work-like situation, "she can be expected to have difficulty providing reasonably good attendance." Id. Jan Jacobson, Ph.D., a psychological consultant, reviewed Nickerson's medical file, including the Swinburne consultation, in February 2013. In contrast to Dr. Swinburne, she opined that Nickerson's "ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances [would be] not significantly limited." Tr. 81. She concluded that Nickerson would not be significantly limited in carrying out very short and simple instructions but would be

7

moderately limited in carrying out detailed instructions. Id. Doctor Jacobson agreed that Nickerson would have some sustained concentration and persistence limitations. Id.

In May 2013, Peter B. Delfausse, M.D., examined Nickerson. See Tr. 251-57. He observed that she "does not see a mental health counselor [and] takes medication for depression and anxiety." Tr. 251. Nickerson showed "limited vocational adjustment," had erratic persistence and was "easily distracted, forgetful, and slow-paced." Tr. 251. He noted that she was "able to provide independent personal care and hygiene, perform household chores, provide child care, shop, cook, drive, and manage personal finances independently." Tr. 256.

By May 2017, Nickerson had begun taking Cymbalta to assist her fibromyalgia. See Tr. 862. She told Dr. King that her depression had improved, that her mood and self-esteem had improved, and that she thought Cymbalta was helping with those issues. Id.

## C. Relevant-period employment

Beginning in late 2013, Nickerson worked as a part-time bus monitor for Safeway Training and Transportation, assisting developmentally disabled children. Tr. 498. In 2015, Safeway asked Nickerson to become a bus driver. See Tr. 499-500. She originally declined, but after having no income for five months,

8

she accepted the offer.  Tr. 500.  The company told her "that it was only going to be part-time," but the job "became more of a full-time position" as she added routes for additional children. Id.  Nickerson testified that during that time, "I would have to drive with my wrists" because of swelling and pain.  Id.  She worked full-time in her bus driver position from some time in 2015 until March 28, 2017.  Tr. 481.

### III. The ALJ's second decision

The ALJ's conclusion followed from his application of the required five-step, sequential analysis.  See 20 C.F.R. § 416.920(a).  At step one, the ALJ found that Nickerson had not engaged in substantial gainful activity from September 30, 2012 until January 2015.  Tr. 436.  From January 2015 until March 2017, however, he noted that she worked above the substantial gainful activity level.  Id.

At step two, the ALJ determined that Nickerson was severely impaired by osteoarthritis of the left knee, osteoarthritis of the right ankle, fibromyalgia, anxiety, affective disorder, and somatoform disorder.  Tr. 437 (citing 20 C.F.R. §§ 404.1520(c) & 416.920(c)).  He observed that Nickerson also testified to migraine headaches, intolerance to light and sound, and nausea and vomiting, but concluded that those diagnoses were non-

severe.  Id.  Finally, he found that Nickerson's fibromyalgia was not severe.  Tr. 439.

At step three, the ALJ found that Nickerson's impairments, considered individually or in combination, did not qualify as a listed impairment pursuant to 20 C.F.R. Part 404, Subpart P, Appendix 1.  Tr. 439 (citing 20 CFR §§ 404.1520(d), 404.1525, 404.1526, 616.920(d), 416.925 and 416.926).  The ALJ specifically considered dysfunction of a major joint and anxiety and depression in his determination.  Tr. 440.  He concluded that there was no record evidence that those conditions have resulted in an inability to ambulate effectively.  Id.  The ALJ found that Nickerson had a mild limitation in understanding, remembering, or applying information; a mild limitation in interacting with others; a moderate limitation regarding concentrating, persisting, or maintaining pace; and a mild limitation in adapting or managing herself.  See Tr. 441-42.  Because the mental limitations did not amount to two "marked" limitations or one "extreme" limitation, the ALJ concluded that the "paragraph B" criteria were not satisfied.  Tr. 442 (citations omitted).  He also determined that the evidence failed to establish the presence of the "paragraph C" criteria.  Tr. Id. (citations omitted).

10

At step four, the ALJ determined that Nickerson had the residual functional capacity ("RFC") to perform sedentary work, as defined in 20 C.F.R. §§ 404.1567(b) & 416.967(a), except that Nickerson was limited to lifting ten pounds occasionally and five pounds frequently. Tr. 443. The ALJ provided that Nickerson could stand or walk for two to three hours, and sit for up to six hours, in an eight-hour workday. Id.. He concluded that Nickerson could not climb ladders, ropes, or scaffolds, could not crawl, and should have no exposure to unprotected heights or dangerous industrial machinery. Id. Nickerson was limited to following simple to moderately detailed, but not complex, instructions. Id. He found that Nickerson could occasionally climb ramps and stairs, and could occasionally balance, stoop, kneel, and crouch. Id. Finally, the ALJ concluded that she could concentrate, persist, and maintain pace "for the typical two-hour periods of an eight-hour workday and forty-hour workweek." Id.

The ALJ acknowledged that Nickerson testified to experiencing frequent pain and being "extremely limited" in her range of functional abilities. Tr. 443-44. Nonetheless, he concluded that "the claimant has failed to establish a correlation between the allegations and the objective medical

11

evidence" and found Nickerson's symptoms "not supported to the extent alleged." Tr. 444 (citations omitted).

According to the ALJ, some of Nickerson's reports of limitations were "not entirely consistent with the objective medical evidence of record." Tr. 446. For instance, he noted that she suffered a knee injury in September 2009, but that her knee examinations were "primarily benign" and she was last treated for that condition in September 2014. See id. (citing Tr. 777). Nickerson similarly experienced an ankle injury in October 2012, but examinations were also "primarily benign" and the last treatment of the condition was in March 2014. Tr. 446 (citing Tr. 287). The ALJ also relied heavily on the fact that "despite these conditions," Nickerson worked as a bus driver "part-time in 2013 and eventually moved to a full-time position in 2015." Id.

At step four, the ALJ found that Nickerson was "capable of performing past relevant work as a bus driver and monitor." Tr. 454. Accordingly, he concluded that she was not disabled during the relevant period. Id. at 456.

### IV. Standard of review

I am authorized to review the pleadings submitted by the parties and the administrative record and enter a judgment affirming, modifying, or reversing the "final decision" of the

12

Commissioner. See 42 U.S.C. § 405(g). That review is limited, however, "to determining whether the ALJ used the proper legal standards and found facts [based] upon the proper quantum of evidence." Ward v. Comm'r of Soc. Sec., 211 F.3d 652, 655 (1st Cir. 2000). I defer to the ALJ's findings of fact, so long as those findings are supported by substantial evidence. Id. Substantial evidence exists "if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support his conclusion." Irlanda Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (per curiam) (quoting Rodriguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981)).

If the ALJ's factual findings are supported by substantial evidence, they are conclusive, even where the record "arguably could support a different conclusion." Id. at 770. If, however, the ALJ derived her findings by "ignoring evidence, misapplying the law, or judging matters entrusted to experts," they are not conclusive. Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999) (per curiam). The ALJ is responsible for determining issues of credibility and for drawing inferences from evidence in the record. Irlanda Ortiz, 955 F.2d at 769. Furthermore, resolving conflicts in the evidence is the exclusive role of the ALJ. Id.

13

### V. Analysis

Nickerson asserts that the ALJ's RFC assessment is not supported by substantial evidence. According to Nickerson, the ALJ failed to give adequate weight to evidence that her fibromyalgia causes her to be off-task for at least a quarter of the day, and erroneously omitted more severe attention and concentration limitations that are supported by the record. Neither argument succeeds.

### A. Physical limitations

The ALJ's determination that Nickerson could perform sedentary work is supported by substantial evidence. In particular, his decision to exclude an "off-task" limitation based on the pain from Nickerson's fibromyalgia is supported by the medical record and adequately explained.[6]

The record as a whole supports the ALJ's conclusion that Nickerson's fibromyalgia does not preclude her from performing sedentary work. He notes that Nickerson reported experiencing pain in her "shoulders, elbows, knees, and ankles, and hands, as well as some fatigue" in February 2015, see Tr. 445 (citing Tr.

---

[6] In this appeal, Nickerson's sole objection to the physical limitations in the RFC is based on the ALJ's purportedly insufficient consideration of the pain caused by her fibromyalgia. See Doc. No. 8-1 at 9-10. In any event, his other determinations of physical limitations, such as the effect of Nickerson's past ankle and knee injuries, are supported by substantial evidence.

802), and acknowledges that she was diagnosed with fibromyalgia in March 2015. See Tr. 445 (citing Tr. 798). The record indicates, however, that in a June 2017 appointment with Dr. Conway, she reported that her use of Cymbalta had helped manage her symptoms. See Tr. 446 (citing Tr. 1035). That examination also indicated that Nickerson had full strength in her upper and lower extremities, full range of motion in all her joints, and no swelling in her wrists, elbows, or knees. See Tr. 446 (citing Tr. 1037). Dr. Conway "agreed with Cymbalta" and did not make any medication changes, and provided that Nickerson could return to Rheumatology on an as-needed basis. See Tr. 446 (citing Tr. 1038).

The ALJ also supported his conclusion with testimony from reviewing medical expert Dr. Caplin, a rheumatologist. See Tr. 450. Dr. Caplin testified that Nickerson's medical impairments did not meet or equal a listed impairment. He concluded that Nickerson's knee, ankle, and fibromyalgia issues "would all be consistent with [being] limited to a sedentary work situation." See Tr. 491; cf. Tr. 450. And the ALJ gave great weight to Dr. Caplin's recommendations on limitations to lifting, standing, walking, and never climbing ladders, ropes, and scaffolds. See Tr. 450 (citing Tr. 491-92).

15

Finally, the ALJ relied in part on the fact that Nickerson worked as a part-time bus monitor beginning in 2013, and as a full-time bus driver from 2015 until March 2017.  See Tr. 446-47 (citing Tr. 481, 500).  This full-time employment post-dated her March 2015 diagnosis of fibromyalgia.  See Tr. 446-47.  Taken together, this evidence constitutes substantial evidence.

An ALJ may "rely on the testimony of a non-examining medical source (here, Dr. Caplin) when that testimony is supported by the record."  Vorce v. Berryhill, 2018 DNH 166, 2018 WL 3854786, at *6 (D.N.H. Aug. 14, 2018) (citation omitted).  Indeed, the "testimony of a non-examining medical advisor . . . can alone constitute substantial evidence" in the proper circumstances.  Berrios Lopez v. Sec'y of Health & Human Servs., 951 F.2d 427, 431 (1st Cir. 1991) (citations omitted).

The ALJ gave great weight to the opinion of Dr. Caplin regarding functional limitations, but only partial weight to Dr. Caplin's endorsement that Nickerson could be off-task 25% of the workday due to her fibromyalgia.  See Tr. 450-51.  This weighing of the evidence was proper for the ALJ to do.  An ALJ "can accept each piece of evidence completely, partially, or not at all, provided that [he] does so on well-supported grounds."  Dimambro v. US Soc. Sec. Admin., Acting Comm'r, 2018 DNH 004, 2018 WL 301090, at *4 (D.N.H. Jan. 5, 2018) (citation and

16

internal quotation marks omitted).  He provided such grounds

here.  The ALJ noted that Dr. Caplin's "off-task" conclusion was

inconsistent with Nickerson's testimony that she worked as a

full-time bus driver in 2015, 2016, and 2017 without negative

performance reviews.  See Tr. 451 (citing Tr. 499-500; 481).  A

claimant's ability to work is a piece of evidence that may be

considered in rejecting a medical opinion.  See Dimambro, 2018

WL 301090 at *12 ("[P]art-time work is an appropriate factor for

the ALJ to consider.") (citation omitted); see also 20 C.F.R.

§ 404.1571 ("Even if the work you have done was not substantial

gainful activity, it may show that you are able to do more work

than you actually did.").

He also discounted Dr. Caplin's conclusion because "the

record reflects that the claimant's medications became

ineffective around this time and after an adjustment in her

medications, she reported much better control of her symptoms."

Tr. 451 (citing Tr. 862; 1035).  And the record confirms that in

July 2017, Nickerson reported to Dr. King that Cymbalta helped

her symptoms.  Tr. 862.  Cf. Newman v. Berryhill, 2018 DNH 097,

2018 WL 2215513, at *4 (D.N.H. May 15, 2018) ("The ALJ based his

RFC assessment not on a finding that [claimant] did not have

severe mental impairments, but on the finding that any

17

functional limitations resulting from such impairments were adequately controlled by medication.").

Nickerson's objections to this conclusion fall short. She claims that the cited treatment records do not support a finding that her "pain symptoms entirely dissipated as a result of the change in her medications." See Doc. No. 8-1 at 10. But the ALJ noted that Nickerson "reported much better control of her symptoms", see Tr. 448 (citing Tr. 1035), not that the pain was absent.

Nickerson faults the ALJ for discounting the opinion of Dr. Conway. An ALJ must provide "specific reasons" that will allow a court to understand the weight he gave to a treating source's medical opinion and the reasons for that weight. See Kenerson v. Astrue, 2011 DNH 074, 2011 WL 1981609, at *4 (D.N.H. May 20, 2011) (quoting Social Security Ruling 96-2p, 1996 WL 374188, at *5 (S.S.A. 1996)). The ALJ did so here. He explained that Dr. Conway saw the claimant only one time, see Tr. 448 (citing Tr. 1031-58), that the opinion "was made out on a checklist style form without any explanation for his opinion regarding the claimant being significantly off-task and absent from work," and was internally inconsistent. See id. Such factors are appropriate to consider, and the ALJ offered a rationale that could be accepted by a reasonable mind. Cf. 20 C.F.R.

§§ 404.1527(d)(2) & 416.927(d)(2); McGrath v. Astrue, 2012 DNH 060, 2012 WL 976026, at \*5 n.13 (D.N.H. Mar. 22, 2012) ("When an opinion is given in a cursory fashion, the ALJ can properly give it less weight.").

Finally, Nickerson notes that the ALJ inconsistently stated that he accorded the findings of fact made by the state agency physicians "substantial weight," but then accorded the opinion of Dr. Nault, a state agency physician, "limited weight." See Tr. 449-50. This does not constitute reversible error. Although it is true that the ALJ mistakenly stated he accorded the state agency physicians "substantial weight," the discussion of the individual opinion, such as noting that Dr. Nault did not examine Nickerson or review the full medical record, makes clear that he accorded limited weight. Nickerson has not shown that such a defect had any adverse impact upon her claim.

In sum, the ALJ did not err in crafting the physical limitations in Nickerson's RFC assessment and his decision is supported by substantial evidence.

### B. Mental limitations

The ALJ's conclusion that Nickerson could perform moderately-detailed work over a forty-hour workweek is supported by substantial evidence.

He acknowledged that Nickerson has been diagnosed with anxiety, affective disorder, and somatoform disorder. See Tr. 451 (citing Tr. 372).[7] He noted, however, that Nickerson has not received ongoing treatment by a psychiatrist and that her conditions "have been primarily treated with medication management provided by her primary care physician." Tr. 451 (citing 340-41) (additional citations omitted). The decision emphasizes that with medication and periodic adjustment, her symptoms have seen significant improvement. Tr. 451 (citing 353; 862). The record reflects this improvement. See, e.g., Tr. 353 ("panic attacks improved w/ klonopin"); Tr. 862 ("Depression better. Thinks Cymbalta is helping with this as well."). Excepting the exacerbations that are adequately controlled by medication, the ALJ observed that Nickerson's "mental status examinations during the relevant period have otherwise been primarily normal." Tr. 451 (citing 324; 406; 863; 958).

The ALJ relied on the opinion of state agency consultant Jan Jacobson, Ph.D., who concluded that Nickerson would be able to understand, remember, and sustain attention for "simple to

---

[7] Specifically, Dr. Swinburne diagnosed Nickerson with moderate recurrent major depressive disorder, "pain disorder with both psychological factors and general medical condition," and "panic disorder without agoraphobia." Tr. 372. Nickerson does not submit that this discrepancy is material.

moderately detailed, but not complex, tasks for extended periods of two hour segments." Tr. 452 (citing Tr. 81) (additional citation omitted). He considered that Nickerson was able to maintain full-time employment as a bus driver for more than two years during the relevant period, see Tr. 500, and that she was able to care for her two children and manage her household. See Tr. 452 (citing Tr. 255; 501-2).

I have already addressed some of Nickerson's objections. Reliance on a reviewing medical advisor can constitute substantial evidence in the proper circumstances, see Berrios Lopez, 951 F.2d at 431, employment during the relevant period can be considered as one factor among many, see Dimambro, 2018 WL 301090 at *12, and an ALJ may consider how impairments are being controlled by medication. See Newman, 2018 WL 2215513, at *4.

Another alleged flaw, that the ALJ improperly discounted the 2013 examining opinion of Dr. Delfeusse, is without merit. Nickerson avers that the ALJ gave that opinion limited weight "based only upon the evidence of her later work activity." Doc. No. 8-1 at 12. In fact, the ALJ found the opinion of Dr. Delfeusse inconsistent "with the record as a whole," and referenced the ability to maintain full-time employment "in particular." See Tr. 454. And the record does support the

21

ALJ's conclusions that Nickerson received generally normal mental status examinations, that medication successfully controlled her conditions, and that her she was able to manage her household despite her impairments.

Nickerson's primary argument, however, is that the ALJ never cured the errors that caused this Court to previously remand the case.

### i.    Opinion of Dr. Swinburne

"An ALJ must take into account the medical opinions in a claimant's case record when making a disability determination." Wenzel v. Astrue, 2012 DNH 117, 2012 WL 2679456, at *4 (D.N.H. July 6, 2012) (citing 20 C.F.R. § 404.1527(b)).  It is for the Secretary, and not the Court, to determine issues of credibility, draw inferences from the record evidence, and resolve conflicts in the evidence.  Irlanda Ortiz, 955 F.2d at 769 (citation omitted).  Nonetheless, reasons given for assigning little weight to a medical opinion must be valid and supported by the record.  See Nickerson, 2017 WL 65559 at *5.

Nickerson contends that the ALJ never mended the errors that prompted this Court to previously remand the case. See id. at *1.  In that case, the Court held that the ALJ improperly concluded that Dr. Swinburne's conclusions were based entirely on Nickerson's subjective reports, relied on medical records

22

that referred to a different patient, and failed to provide a sufficient justification for assigning little weight to Dr. Swinburne's opinion.  See id. at *5-6.  On remand, the ALJ again accorded the opinion of Dr. Swinburne "limited weight."  See Tr. 453.  This time, however, the ALJ's opinion is adequately supported.

Unlike the original decision, which concluded that "Dr. Swinburne could only conclude [such limitations] based upon the claimant's self-report," see Tr. 23, the new opinion states that "some of Dr. Swinburne's opinion appears to be based" upon self-reports.  Tr. 453 (emphasis added).  The opinion likewise omits any reference to the records that pertained to the other patient.  See Nickerson, 2017 WL 65559 at *5.  Dr. Swinburne opined that Nickerson lacks motivation and energy and "can be expected to have difficulty providing reasonably good attendance."  Tr. 372.  The ALJ discounted this conclusion, in part, because of Nickerson's testimony that she "maintained full-time employment for more than two years."  Tr. 453.  That was a permissible conclusion.  See Dimambro, 2018 WL 301090, at *12.

The ALJ also relied on the opinion of Dr. Jacobsen, which he found "most persuasive," in discounting Dr. Swinburne's conclusion.  See Tr. 454.  After reviewing Dr. Swinburne's

23

opinion, Dr. Jacobsen concluded that Nickerson was "able to sustain attention for simple to moderately detailed, but not complex tasks" for two hours in an eight-hour day.  See Tr. 82. An ALJ may accord substantial weight to the opinions of non-treating medical reviewers when those doctors have reviewed the record and supported their conclusions with reference to medical findings.  D.A. v. Colvin, No. CIV.A. 11-40216-TSH, 2013 WL 5513952, at *7 (D. Mass. Sept. 30, 2013) (citing Quintana v. Comm'r. of Soc. Sec., 100 Fed. Appx. 142, 144 (1st Cir. 2004)). Such is the case here.  The ALJ's decision to accord limited weight to the opinion of Dr. Swinburne is supported by substantial evidence and adequately explained.

-

In sum, the ALJ properly evaluated and explained the limitations he provided in his RFC assessment.  The decision of the Acting Commissioner shall be affirmed.

## V.  CONCLUSION

The ALJ's RFC assessment is supported by substantial evidence and contains no reversible error.  Pursuant to sentence four of 42 U.S.C. § 405(g), I grant the Acting Commissioner's motion to affirm (Doc. No. 11) and deny Jodie Marie Nickerson's motion to reverse (Doc. No. 8).  The clerk is directed to enter judgment accordingly and close the case.

**SO ORDERED.**

/s/ Paul Barbadoro_____
Paul Barbadoro
United States District Judge

June 27, 2019

cc:  D. Lance Tillinghast, Esq.
     Amelia E. Stewart, Esq.
     Rami M. Vanegas, Esq.